| | |
|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, § § § Plaintiff, § § v. § PRYSMIAN CABLES AND SYSTEMS § USA, LLC, § § Defendant. § | CIVIL ACTION NO. 3:23-cv-01153 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRYSMIAN CABLES SYSTEMS USA, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND .......................................................................................... 3
    A. The General Cable/Prysmian -- Shoals Business Relationship. ........................... 3
    B. General Cable's Terms & Conditions Governed All Transactions Between the Parties. ............................................................................................................... 5
    C. Shoals Asserts Various Claims Based on Inapplicable Contract Terms and Inapplicable Industry Standards. ........................................................................... 6
III. ARGUMENT AND AUTHORITIES ............................................................................. 7
    A. Legal Standard. ...................................................................................................... 7
    B. All of Shoals' Claims Fail Because Shoals Does Not Allege That (1) Prysmian Breached the Applicable Terms & Conditions or (2) That the Product Fails to Meet Any Applicable Industry Standard. ................................... 8
        1. Shoals' Claims Based on Its Own 2021 Terms & Conditions Fail Because General Cable's Terms & Conditions Govern the Purchases. ................................................................................................. 8
        2. Shoals Did Not Plausibly Allege That the Cable Wire Fails to Meet Any Applicable Industry Standard. .......................................................... 10
        3. Shoals' Tort Claims (Counts 1, 12, 13, and 14) Fail for the Additional Reason That They Are Barred by the Economic Loss Rule. ................................................................................................................ 11
    C. Shoals' Unjust Enrichment Claim (Count 4) Fails for the Additional Reason That an Express Contract Governs. .......................................................... 12
    D. Shoals' Claim for Punitive Damages Is Barred. .................................................. 13
IV. CONCLUSION ............................................................................................................... 14

Defendant Prysmian Cables and Systems USA, LLC ("Prysmian") files this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Shoals Technologies Group, LLC's ("Shoals") claims under Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

Shoals asserts 14 baseless causes of action against Prysmian that are intended to shift blame for Shoals' own defective products, design and/or work. Shoals is a long-time customer of Prysmian (and its predecessor, General Cable Industries, Inc. ("General Cable")),[1] purchasing red and black insulated photovoltaic wire that Shoals uses as a component part in its custom wire harnesses and solar power generation solutions. In response to a customer complaint regarding Shoals' products and solutions, Shoals has attempted to blame Prysmian by claiming that some of the red wire from Prysmian has exhibited an "unacceptable" level of "shrinkback." Shoals has not only made these false allegations in its Complaint, but has also made them publicly (at least in an earnings conference call and related press release), and, upon information and belief, to various Prysmian customers in the industry, and has thereby defamed and damaged Prysmian.

The red wire that Prysmian sold to Shoals, and many other customers, for years meets every applicable industry standard, including the typical and accepted level of shrinkback that is known to occur in XLPE wire insulation. While there are no industry tests for shrinkback that apply to the low voltage, stranded wires at issue in this case, Prysmian developed its own tests for shrinkback for these products, and confirmed that wires sold to Shoals passed these tests. To the extent that Prysmian's red wires started to have excessive exposed conductor in Shoals' custom-designed systems, that is the result of Shoals' (or its contractors' or other third parties')

---

[1] For ease of reference, Prysmian and General Cable will be referred to collectively as "Prysmian."

manufacturing, design, assembly or installation defects, not of any defect in the design or manufacture of Prysmian's red wires.

Each of Shoals' claims is based on either a supposed breach of Shoals' 2021 Terms & Conditions or Shoals' theory that the Prysmian red wire has an "unacceptable" level of shrinkback, or both. Neither theory can support any claim against Prysmian. As a foundational matter, Shoals' 2021 Terms & Conditions never governed the transactions between Shoals and Prysmian. Rather, when General Cable and Shoals first started their business relationship, and for all relevant times thereafter, General Cable's Terms & Conditions applied to the parties' transactions. Shoals did not provide its own proposed Terms & Conditions to General Cable until November 2021, more than seven years after Shoals began its business relationship with General Cable, which expressly and repeatedly asserted that the General Cable Terms & Conditions applied. Prysmian never accepted or agreed to Shoals' proposed 2021 Terms & Conditions. Thus, under the General Cable Terms & Conditions, and the parties' course of dealing, Shoals' proposed 2021 Terms & Conditions never applied. Instead, General Cable's Terms & Conditions applied, and Prysmian is entitled to a declaration that it has not breached any of those terms. Prysmian is also entitled to recover at least $835,203.62 for wire that Shoals purchased but then subsequently refused to pay for.

Shoals' theory that the red wire exhibited an "unacceptable" level of shrinkback is equally flawed. Shoals contends that the red wire fails to meet the industry standards for shrinkback set forth in the Underwriter Laboratories ("UL") 44 and 4703 standards. But those standards do not have shrinkback tests that apply to stranded wires (versus wires with a solid conductor). As Shoals admits, the red wires it purchased from Prysmian had a stranded conductor—not a solid conductor. Accordingly, the Shoals Complaint's references to and reliance on these UL standards are

2

inapposite. Similarly, the Insulated Cable Engineers Association S-94-649 ("ICEA") shrinkback test referenced by Shoals applies only to medium voltage wires (i.e., wires rated for 5,000 volts to 46,000 volts). The red wire sold to Shoals by Prysmian was a low voltage wire, rated for 2,000 volts – it is a completely different category of product than the medium voltage cables subject to the ICEA.[2]

Shoals' other claims fail for additional reasons.

*First*, Shoals' tort claims are barred by the economic loss rule. Shoals' only alleged damage is to the product (cable wire) itself. It is well settled that the economic loss rule bars tort claims based on product liability where the only alleged damage is to the product or the subject matter of a binding contract.

*Second*, Shoals' claims for punitive damage must be dismissed because plaintiff has sought breach of contract claims which would make it whole were it to prevail. Under Kentucky law, which governs this dispute pursuant to the General Cable Terms & Conditions, punitive damages are unavailable under such circumstances.

*Third*, Shoals' unjust enrichment claim fails as a matter of law because Shoals has alleged that a contract governs the parties' relationship. The existence of a contract is undisputed even if it is contested as to which specific contract terms apply.

## II. FACTUAL BACKGROUND

**A. The General Cable/Prysmian -- Shoals Business Relationship.**

Prysmian is a global leader in the design, manufacture and sale of electrical cables used in the energy and telecom industries. ECF No. 1, Compl. ¶ 17. Prysmian annually manufactures

---

[2] Prysmian is very familiar with the ICEA tests because Prysmian manufactures many medium voltage products subject to the ICEA and such products pass the ICEA shrinkback testing requirements.

3

thousands of miles of underground and submarine cables and systems for power transmission and distribution and medium and low voltage cables for the construction and infrastructure sectors. *Id.* Prysmian's significant cable portfolio includes 10 and 12 American wire gauge ("AWG") black and red insulated copper photovoltaic cable wire. *Id.* ¶ 16.

Shoals manufactures and sells certain products that it ships to solar fields and provides related services and "solutions" associated with those products. *Id.* ¶ 11. Shoals represents that it is "a leading provider" of electrical balance of system ("EBOS") solutions for solar energy projects. *Id.* Shoals custom-manufactures wire harnesses (including tee joints and in-line fuses) as a component of its EBOS solutions. *Id.* ¶ 15.

Shoals was a long-time customer of General Cable, which Prysmian's ultimate parent company (Prysmian S.p.A. (Italy)) acquired in July 2018. *Id.* ¶¶ 6, 16. General Cable remained a separate legal entity until January 1, 2022, when it merged into Prysmian, and Prysmian became the successor-in-interest to General Cable. *Id.* ¶ 6. Prysmian consistently sold large quantities of polymer-insulated black and red 10 and 12 AWG copper wire, among other products, to Shoals over the course of the parties' relationship, dating back to at least 2014. *Id.* ¶ 16. Prysmian sent Shoals a weekly price sheet for the wire that it sold to Shoals. *Id.* ¶ 24. Starting in 2017 (at the latest), the weekly price sheets specifically stated that General Cable's Terms & Conditions, which were attached to and referenced in the price sheets, applied to the parties' transactions, including future transactions. *See, e.g.*, Ex. A., Oct. 23, 2017 Price Sheet.[3]

Prysmian also provided specification sheets to Shoals that stated its products were compliant with certain industry standards. *Id.* ¶¶ 24, 46. The specification sheets were general

---

[3] The Court may consider the price sheet because it is "referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *see, e.g.*, Compl. ¶ 24.

4

information sheets and covered a myriad of products. *Id.* Importantly, the UL 44 and UL 4703[4] standards cited in the Complaint and referenced in the specification sheets set forth shrinkback requirements that apply only to wires with a *solid* copper conductor—and do not apply to *stranded* copper wires. *See* ECF No. 1-7, Ex. F to Compl. § 5.21. *All* of the Prysmian red wire that Shoals chose to purchase and that is at issue in this lawsuit has a *stranded* conductor (Compl. ¶ 41); thus, the UL 44 and UL 4703 shrinkback standard is *inapplicable to the Prysmian wire at issue*. The Complaint does not allege that Prysmian directed Shoals' choice; it was Shoals' decision to purchase stranded conductor wire for use in Shoals' system design to meet Shoals' customers' needs.

Similarly, the ICEA shrinkback test ("Concentric Neutral Cables Rated 5 Through 46KV") does not apply to the Prysmian wires, which were rated only for 2,000 volts, not 5,000–46,000 volts, and have a simplified design, generally smaller conductor and no concentric neutrals as compared to medium voltage cables. *See* ECF No. 1-9, Ex. H to Compl.; *see also, e.g.*, Compl. ¶ 20.

B.  **General Cable's Terms & Conditions Governed All Transactions Between the Parties.**

Shoals' acceptance of Prysmian's red insulated wire operated as acceptance of General Cable's Terms & Conditions. Ex. B, General Cable Terms & Condition, ¶ 1. By contracting pursuant to General Cable's Terms & Conditions, Shoals agreed to the following, among other things:

> Acceptance by [Shoals], and each offer by [General Cable], is expressly limited to the Terms . . . . [Shoals] shall be deemed to have agreed to all of the Terms (and only such Terms), notwithstanding any different or additional terms contained in any purchase order, acknowledgement, offer, document or other communication of any kind submitted by [Shoals].

---

[4] UL 4703 incorporates portions of UL 44.

*Id.*[5] Additionally, the parties agreed that:

> [t]he Terms, together with such other documents specifically made a part of [General Cable's] offer, shall constitute the complete and exclusive statement of the agreement between the parties . . . which may have existed relating to the Goods, and *may be modified only by a written instrument executed by authorized representatives of both parties*.

*Id*. (emphasis added).

General Cable's Terms & Conditions also expressly made clear that Kentucky law governs disputes between the parties, including this lawsuit:

> **14. APPLICABLE LAW AND JURISDICTION.** This Agreement and all obligations, rights and remedies of the parties with respect to this Agreement and the Goods, and all issues, controversies or other matters arising between the parties with respect to the Goods and the transactions contemplated by this Agreement *shall be governed by and interpreted exclusively in accordance with the laws of the Commonwealth of Kentucky* (without applying its conflict of law rules).

*Id*. ¶ 14 (emphasis added).

**C.    Shoals Asserts Various Claims Based on Inapplicable Contract Terms and Inapplicable Industry Standards.**

The Complaint alleges that although the red wire Shoals purchased from Prysmian from approximately 2014 through 2019 exhibited no performance issues, the red wire it purchased from Prysmian afterward allegedly exhibits "unacceptable insulation shrinkback." Compl. ¶¶ 38, 60. Insulation shrinkback is a well-known and accepted phenomenon in wire insulation that "is a gradual process dependent on both time and temperature that occurs when the insulating material around the conductor contracts in a way that exposes the conductor under the insulation." *Id.* ¶ 37. Shoals' Complaint relies on the inapplicable Shoals proposed 2021 Terms & Conditions and

---

[5] The Court may consider General Cable's Terms and Conditions because it is the governing contract between the parties, which is central to Shoals' Complaint. *See, e.g.*, *Archambeault v. Wyndham Vacation Ownership, Inc.*, No. 3:20-CV-01044, 2021 WL 6496827, at *4 (M.D. Tenn. July 14, 2021) (considering contract proffered by defendant with motion to dismiss).

alleges that those proposed 2021 Terms & Conditions provided that the red wire would comply with "certain minimum quality standards," including that they "must be certified to UL." *Id.* ¶ 32. In addition, Shoals alleges that Prysmian's "specification sheet" represents that the wire will comply with UL 44 and UL 4703, which, among other things, establish the minimum acceptable level of shrinkback in the industry. *Id.* ¶ 46.

As explained above, while the wires offered by Prysmian comply with the relevant UL standards (and are certified as such), UL 44 and UL 4703 do not have shrinkback tests that apply to the stranded Prysmian wire purchased by Shoals. Nevertheless, as part of its manufacturing process, Prysmian tests its wires under its own strict testing protocol. *Id.* ¶ 54. There is no allegation (and there is no evidence) that Prysmian's wires sold to Shoals did not meet these internal Prysmian tests.

Despite Prysmian's wires not being defective, Shoals asserts causes of action for (1) defective product under the Tennessee Products Liability Act; (2) Breach of Contract for wire sold until November 2021; (3) Breach of Contract under Shoals' 2021 Terms & Conditions; (4) Unjust Enrichment; (5) Breach of Implied Covenant of Good Faith and Fair Dealing; (6) Breach of Express Warranty; (7) Breach of Implied Warranty of Merchantability; (8) Breach of Implied Warranty of Fitness for a Particular Purpose; (9) Express Indemnity; (10) Equitable Indemnity; (11) Intentional Misrepresentation; (12) Negligence; (13) Gross Negligence; and (14) Strict Liability. Each of these claims should be dismissed for the reasons explained below.

### III. ARGUMENT AND AUTHORITIES

**A.  Legal Standard.**

To defeat a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the plausibility test "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The Court "need not accept as true legal conclusions or unwarranted factual inferences" in the Complaint. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

**B. All of Shoals' Claims Fail Because Shoals Does Not Allege That (1) Prysmian Breached the <u>Applicable</u> Terms & Conditions or (2) That the Product Fails to Meet Any <u>Applicable</u> Industry Standard.**

Each claim asserted by Shoals relies on either a purported breach of Shoals' proposed 2021 Terms & Conditions or that the wire did not comply with maximum shrinkback requirements in certain "industry standards."[6] However, Shoals' proposed 2021 Terms & Conditions do not govern the relationship between the parties. And the industry standards referenced in the Complaint do not apply shrinkback standards to the stranded wires at issue in this lawsuit. For these reasons, as explained in further detail below, all of Shoals' claims fail.

*1. Shoals' Claims Based on Its Own 2021 Terms & Conditions Fail Because General Cable's Terms & Conditions Govern the Purchases.*

Shoals admits that it began purchasing the red wire at issue from Prysmian in 2014 or 2015 pursuant to Prysmian's weekly price sheets, and that it had purchased other wire from Prysmian for years prior to that. Compl. ¶¶ 16, 24. Shoals also admits that it is complaining only about red

---

[6] Compl. ¶ 86 (Tennessee Products Liability Act), ¶ 96 (breach of contract for wire sold under November 2021), ¶ 106 (breach of contract Shoals' 2021 Terms & Conditions), ¶ 112 (unjust enrichment), ¶ 116 (breach of implied covenant of good faith and fair dealing), ¶ 124 (breach of express warranty), ¶ 130 (breach of implied warranty of merchantability), ¶ 139 (breach of implied warranty of fitness for a particular purpose), ¶ 145 (express indemnity), ¶ 152 (equitable indemnity), ¶ 158 (intentional misrepresentation), ¶ 168 (negligence), ¶ 176 (gross negligence), ¶ 182 (strict liability).

8

wires that it purchased after 2019. *Id.* ¶ 60. But Shoals omits that it was provided with General Cable's Terms & Conditions by 2017 at the latest, which Shoals agreed to by accepting the wire that it had purchased and continued to purchase from Prysmian. Ex. B, ¶ 1; *see, e.g.*, Compl. ¶¶ 24, 25. General Cable's Terms & Conditions thereafter applied to all transactions between Shoals and Prysmian and were never modified in accordance with those Terms & Conditions. *Id.*

Shoals does not plausibly allege that its own proposed Terms & Conditions somehow superseded General Cable's Terms & Conditions. Nor could it. Shoals concedes that it did not provide its own proposed Terms and Conditions to Prysmian until years later, in November of 2021, when it "began issuing purchase orders to Prysmian referencing" Shoals' 2021 Terms & Conditions." Compl. ¶ 29. The parties could not have operated pursuant to terms and conditions that Prysmian did not know existed. And the preexisting General Cable Terms & Conditions explicitly provide that any future shipment of goods shall not be deemed acceptance of any additional terms:

> Seller hereby expressly objects to any terms submitted by Buyer which are additional to, different from, or conflict with, the Terms. Neither the failure of Seller to *separately* object to a purchase order or other communication from Buyer, nor the development, manufacture, production or shipment of the Goods shall be deemed an agreement by Seller to any terms or conditions which are additional to, different from, or conflicting with, the Terms.

Ex. B, ¶ 1.

The Complaint ignores the terms and conditions that govern the parties' business relationship. This renders Shoals' Complaint, and each of the claims therein, facially defective. Because Shoals fails to allege plausibly that its own terms and conditions apply to the purchases at issue, each claim fails to the extent it depends on an alleged violation of Shoals' proposed 2021 Terms & Conditions.

9

In addition, Shoals' cause of action under the Tennessee Products Liability Act must be dismissed because General Cable's Terms & Conditions expressly provide that Kentucky law governs this dispute. Ex. B, Terms & Conditions, ¶ 14. *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 399 (6th Cir. 2020) ("'governed by' language is the key phrase that encompasses tort claims." (citing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139–40 (6th Cir. 1991))). General Cable and Prysmian as successor-in-interest were at all relevant times headquartered in Kentucky (Compl. ¶ 5), so the Kentucky choice of law provision is enforceable in Tennessee. *See Nat'l Waste Assocs., LLC v. Lifeway Christian Res. of the S. Baptist Convention*, No. 3:20-CV-00654, 2022 WL 2920395, at *10 (M.D. Tenn. July 25, 2022) (quoting *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016)) ("A state encompassing one party's headquarters is enough to establish 'a reasonable relation to the transaction'"), *amended on reconsideration in part sub nom. Nat'l Waste Assocs., LLC v. Lifeway Christian Res. of S. Baptist Convention*, 637 F. Supp. 3d 514 (M.D. Tenn. 2022).

### 2. Shoals Did Not Plausibly Allege That the Cable Wire Fails to Meet Any Applicable Industry Standard.

Shoals alleges that some of the red wire it purchased from Prysmian exhibited an "unacceptable amount of insulation shrinkback" because it "does not comply with UL 44 or UL 4703." Compl. ¶¶ 46, 91, 124a, 158. However, Shoals acknowledges that the red wire at issue has a "stranded" conductor. *Id.* ¶ 41. In contrast, on its face, the UL 44 standard contains a shrinkback requirement that applies only to cable with a solid copper conductor. ECF No. 1-7, Compl. Ex. F § 5.21; *see also* Compl. at n.9 (stating that UL 4703 incorporates by reference UL 44). Because the shrinkback testing aspect of these standards does not apply to the stranded wire at issue, and Shoals has not alleged that the wire at issue failed to meet any other material and applicable aspect of these standards, Shoals cannot recover for any alleged violation of them.

10

Similarly, Shoals cannot recover for any supposed failure to meet the shrinkback standard of the "ICEA Test" because that test did not apply to the red wire at issue in this lawsuit. The ICEA Test explicitly applies to only "Concentric Neutral Cables Rated 5 Through 46KV" (ECF No. 1-9, Ex. H to Compl. at 2), meaning medium range wires rated for 5,000 volts to 46,000 volts. In contrast, the red wires purchased by Shoals were low voltage wires rated only up to 2,000 volts. Compl. ¶ 20. Thus, the ICEA Test, and all references to ICEA S-94-649, are inapplicable. Shoals' claims fail for this reason.

### *3.* **Shoals' Tort Claims (Counts 1, 12, 13, and 14) Fail for the Additional Reason That They Are Barred by the Economic Loss Rule.**

Shoals' tort claims should be dismissed pursuant to the economic loss rule, which "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011); *see also Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 849 (6th Cir. 2002) ("The economic loss rule permits recovery for damages to property other than the product purchased but denies recovery for damages to the product itself."). Courts apply the economic loss rule to claims for violation of the Tennessee Products Liability Act, negligence, and strict liability. *See Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 132 (Tenn. 1995) (liability under the Tennessee Products Liability Act "is limited to physical harm to a person or property and does not extend to economic loss."); *Sullivan v. Panther Petrol., LLC*, No. 119CV01259STAJAY, 2020 WL 1550230, at *3 (W.D. Tenn. Mar. 31, 2020) (dismissing negligence claim); *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009) (quoting *Ritter*, 912 S.W.2d at 133) ("In Tennessee, the consumer does not have an action

11

in tort for economic damages under strict liability"); *Giddings & Lewis, Inc.*, 348 S.W.3d at 738 (economic loss rule applies to negligence and strict liability claims).

A valid, enforceable, and controlling contract—General Cable's Terms & Conditions—existed between the parties, as explained above.[7] Shoals does not allege that it suffered any damage apart from damage to the allegedly defective wire itself. *See* Compl. ¶ 1 ("This is an action to recover for damages caused by defective wire [Prysmian] sold to [Shoals.]"). Likewise, Shoals does not allege it suffered damages independent of those it allegedly suffered due to Prysmian's alleged breach of contract. To the extent Shoals alleges (albeit without specificity) any damage to property apart from the wire, it is clear from the face of the Complaint that it was not *Shoals'* property that was damaged. Therefore, the economic loss rule mandates that Shoals may only recover its alleged damages (if any) pursuant to the (applicable) contract between the parties and that its tort claims must be dismissed.

## C. Shoals' Unjust Enrichment Claim (Count 4) Fails for the Additional Reason That an Express Contract Governs.

Shoals' alternative cause of action for unjust enrichment must be dismissed because an express contract—General Cable's Terms & Conditions—governs Shoals' claims. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) ("Because unjust enrichment is a quasi-contractual remedy, however, a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation.") (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)). Courts routinely dismiss unjust enrichment claims brought "in the alternative" where the Complaint alleges that a contract governs the dispute. *See, e.g.*, *Kalos, LLC v. White House Vill., LLC*, No. 3:20-CV-00812, 2020 WL 7027502, at *4 (M.D. Tenn. Nov. 30,

---

[7] Even accepting Shoals' position that Shoals' proposed 2021 Terms & Conditions or other contractual terms govern, Shoals' tort claims still must be dismissed under the economic loss rule.

12

2020) (dismissing unjust enrichment claim "[b]ecause Plaintiff admits in its Complaint that it had a valid contract"); *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) (affirming dismissal of unjust enrichment claim under Kentucky law because "it was based on the same subject matter as his breach of contract claims"). Accordingly, Shoals' unjust enrichment claim must be dismissed because the Complaint asserts breach of contract claims and alleges that the parties' relationship is governed by contract.

**D.     Shoals' Claim for Punitive Damages Is Barred.**

Shoals alleges that Tennessee law permits recovery of punitive damages in breach of contract cases if a defendant acted intentionally, fraudulently, maliciously, or recklessly; however, Shoals fails to plead that it is entitled to punitive damages under Kentucky law, which governs this dispute. Compl. ¶ 100. Under Kentucky law, "when a plaintiff may obtain complete relief for his contractual losses by means of compensatory damages under a breach of contract claim, even when the breach is motivated by malice and accomplished through fraud, he may not simultaneously recover punitive damages after being made whole on his contractual damages." *Nami Res. Co., L.L.C. v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018).

Although Shoals is not entitled to any of the relief it seeks, if it were, Shoals would theoretically be made whole for the damages resulting from Prysmian's alleged breach of contract. Thus, under the controlling Kentucky law, Shoals cannot recover punitive damages.

In addition, General Cable's Terms & Conditions expressly prohibit recovery of punitive damages. Ex. B, General Cable Terms & Conditions, ¶ 9. For these reasons, Shoals cannot recover the punitive damages it seeks on its breach of contract (Counts Two and Three), intentional misrepresentation (Count Eleven), or gross negligence claims (Count Thirteen).

13

## IV. CONCLUSION

As explained above, Shoals' Complaint should be dismissed in its entirety under Rule 12(b)(6). Prysmian respectfully requests that this Court dismiss Shoals' claims in their entirety and grant Prysmian all relief at law or equity to which it is justly entitled.

Dated: December 15, 2023                                      Respectfully submitted,

**FROST BROWN TODD LLP**

*/s/ Lucas T. Elliot*
Lucas T. Elliot (BPR # 037084)
lelliot@fbtlaw.com
Elle G. Kern (BPR # 034301)
ekern@fbtlaw.com
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
615.251.5500 (Telephone)

*Attorneys for Defendant Prysmian Cables and Systems USA, LLC*

OF COUNSEL:

**MORGAN, LEWIS & BOCKIUS LLP**

David J. Levy (pro hac vice application forthcoming)
Texas State Bar No. 12264850
david.levy@morganlewis.com
Cullen G. Pick (pro hac vice application forthcoming)
Texas State Bar No. 24098260
cullen.pick@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX 77002
713.890.5000 (telephone)

Deanne Miller (pro hac vice application forthcoming)
California State Bar No. 185113
deanne.miller@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
213.612.2500 (telephone)

Matthew Papkin (pro hac vice application forthcoming)
Florida State Bar No. 106565
matthew.papkin@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL, 33131-3075
315.415.3000 (telephone)

**CERTIFICATE OF SERVICE**

I certify that on December 15, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Middle District of Tennessee via the CM/ECF system. I hereby certify that I have served the document on all counsel of record by a manner authorized by LR 5.01:

Jessalyn H. Zeigler
Jeffrey Gibson
Courtney A. Hunter
BASS, BERRY, & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
jzeigler@bassberry.com
jgibson@bassberry.com
courtney.hunter@bassbery.com

Jill C. Kuhn
TROUTMAN PEPPER HAMILTON SANDERS
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30308
Jill.Kuhn@Troutman.com

James Barton Manley
MCKENNA LONG & ALDRIDGE, LLC
303 Peachtree St. NE
5300 SunTrust Plaza
Atlanta, GA 30308
Jim.Manley@Troutman.com

*Attorneys for Plaintiff Shoals Technologies Group, LLC*

                                                        */s/ Lucas T. Elliot*
                                                        Lucas T. Elliot

2799560.0779049  4858-1729-1671