UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 3:23-cv-01153 ) ) |
| PRYSMIAN CABLES AND SYSTEMS USA, LLC | ) Judge Campbell ) Magistrate Judge Holmes ) |
| Defendant. | ) ) ) ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Prysmian's Motion to Dismiss ("Motion") must be denied because it does not address the legal sufficiency of the Complaint and disregards the legal standard applicable to a Rule 12(b)(6) motion.[1] Each of Shoals' factual allegations must be taken as true at this stage in the proceedings, regardless of the extrinsic evidence Prysmian attempts to introduce into the record. Prysmian's

---

[1] The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case. *See Scott v. Regions Bank*, 702 F. Supp. 2d 921, 926 (E.D. Tenn. 2010). To survive a motion to dismiss, a plaintiff's factual allegations must simply "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Importantly, when ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *see Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 503 (6th Cir. 2002) (explaining that the defendant's burden at the motion to dismiss stage "is a high one").

1

motion to dismiss Shoals' tort claims pursuant to the economic loss rule also fails, as Shoals is seeking damages related to other property harmed by Prysmian's defective wire. Furthermore, the Federal Rules of Civil Procedure explicitly permit Shoals to plead various theories of liability in the alternative, and thus this Court should deny Prysmian's request to dismiss Shoals' unjust enrichment claim. And finally, the allegations in Shoals' Complaint support its request for punitive damages. Prysmian's Motion should be denied in its entirety.

## LEGAL ANALYSIS

### I. Prysmian's Motion Fails Because it is Based Upon Prysmian's Version of Facts, Not those Pled in the Complaint

Prysmian's Motion to Dismiss must be denied because it disputes the factual allegations underlying the Complaint, rather than the Complaint's legal sufficiency. *See Scott v. Regions Bank*, 702 F. Supp. 2d 921, 926 (E.D. Tenn. 2010). Worse, Prysmian's Motion impermissibly asks the Court to accept its competing version of the facts—the opposite of what the Court must do at this stage.

#### a. Which Parties' Terms and Conditions Apply to the Numerous Separate Transactions at Issue are Factual and Legal Questions that Cannot be Decided at this Stage

Prysmian ignores the facts pled by Shoals and asserts the self-serving conclusion that its terms and conditions control over the many years of sales transactions between the parties. But the Court must focus on what Shoals alleges. Shoals alleges that it purchased photovoltaic wire from Prysmian through a series of separate and distinct sales transactions over time. Dkt. 1, ("Compl.") ¶¶ 25-30. As alleged in Shoals' Complaint, Prysmian would issue price sheets to Shoals, and in response to these price sheets, Shoals would issue purchase orders to Prysmian. *See* Compl. ¶ 25. For at least some portion of the relevant time period, Prysmian would send Shoals a weekly price sheet in the form of the example provided at Exhibit C to Shoals' Complaint. That

2

price sheet does not contain any terms and conditions. *Id.* at Ex. C. Prysmian accepted Shoals' purchase orders by shipping wire to Shoals. *Id.* ¶¶ 27, 36. In November 2021, Shoals altered the parties' course of dealing by introducing terms and conditions to govern the parties' transactions. *See id.* ¶¶ 30-35. To the extent Prysmian attempted to introduce terms and conditions into the series of transactions during the 2020 through 2022 time period, any such terms and conditions were not accepted by Shoals and did not become part of the parties' agreements, and to the extent they materially altered the parties' agreements, they were of no effect. Compl. ¶ 26.

Prysmian disputes Shoals' factual allegations, attaching to its Memorandum (1) a price sheet from 2017 (an irrelevant period of time well before the defective wire at issue was sold to Shoals), and (2) an undated document titled "General Cable Corp. Standard Terms & Conditions." *See* Memorandum, Exs. A & B. However, neither of Prysmian's exhibits can be considered at this stage in the proceedings.[2] *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) ("[I]n ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally may not consider any facts outside the complaint and exhibits attached thereto."). Prysmian's contention that the price sheet it attached as Exhibit A is "referred to in the complaint

---

[2] If this Court is inclined to consider Prysmian's exhibits, this "motion must be treated as one for summary judgment under Rule 56," and Shoals "must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See* Fed. R. Civ. P. 12(d). Shoals reserves its rights to present its own evidence on this issue if this Court decides to treat Prysmian's Motion as a motion for summary judgment. Even if this Court were to consider Prysmian's materials, they do not support Prysmian's argument. Shoals alleges in its Complaint that Prysmian wire it purchased from approximately 2020 through 2022 has exhibited unacceptable levels of insulation shrinkback in the field. *See* Compl. ¶ 67. The price sheet attached as Exhibit A is dated in 2017, *years* prior to the defect and is therefore inapplicable. Regardless, this price sheet references "General Cable Corp. Standard Terms & Conditions," which is not the title of the document attached as Exhibit B. *Compare* Memorandum at Ex. A *with* Memorandum at Ex. B, titled "General Cable Terms and Conditions of Sale (United States)." Exhibit B is also undated, and there is nothing demonstrating that it was ever communicated to, received by, or agreed to by Shoals. *Id.*

and is central to the plaintiff's claim," *see* Memorandum at 4 n.3, is incorrect. Shoals' Complaint makes no reference to a price sheet from 2017, nor would such a document from that time be relevant, much less central, to Shoals' claims, as it predates the time-period at issue in the case.

Putting this to the side, courts considering "what role, if any, is played by" terms allegedly included in parties' transactional documents routinely deny motions to dismiss, and even motions for summary judgment, because these "arguments are predicated upon the resolution of numerous issues of fact," which cannot be decided at the early stages of a proceeding. *See, e.g.*, *Tekfor, Inc. v. SMS Meer Serv., Inc.*, No. 5:12-CV-1341, 2013 WL 774176, at *4 (N.D. Ohio Feb. 25, 2013) (determining contract terms pursuant to a battle of the forms analysis is "predicated upon the resolution of numerous issues of fact that have not been and cannot be decided" at the motion to dismiss stage); *Racing Head Serv., LLC v. Mallory Alexander Int'l Logistics, LLC*, No. 09-2604-STA-TMP, 2012 WL 174862, at *15 (W.D. Tenn. Jan. 20, 2012) (denying a motion for summary judgment in part where "it is unclear to the Court which terms and conditions were provided to Plaintiffs"); *Guardsmark (Puerto Rico), LLC v. Miramar Real Est. Mgmt., Inc.*, No. 08-2317, 2009 WL 10665199, at *7 (W.D. Tenn. Feb. 24, 2009) (denying summary judgment where the defendant disputed whether it "receive[d] the back of the invoices," which contained the purported terms and conditions). Determining which terms and conditions apply to the transactions at issue is a fact-specific inquiry that is inappropriate for a Motion to Dismiss, as it would require the Court to determine from the pleadings alone the sequence in which each party submitted documents, which documents were received, and which party agreed to what terms and conditions during the course of their numerous transactions. Prysman's Motion should be denied.[3]

---

[3] Even if, however, one ignores the allegations within Shoals' Complaint, and accepts Prysmian's version of the events as true, effectively *reversing* the parties' roles in a Rule 12(b)(6) motion,

### b. Shoals' Complaint Alleges Sufficient Facts to Establish a Claim Related to Prysmian's Sale of Defective Wire

Shoals' Complaint alleges that Prysmian's wire exhibiting an unacceptable amount of insulation shrinkback does not comply with UL 44 or UL 4703 and does not conform to the standards outlined in Prysmian's own specification sheet. *See* Compl. ¶¶ 37-47 & Ex. B. Shoals also alleges the wire at issue experiences insulation shrinkback to a degree greater than acceptable industry standards and test methodology, including the referenced UL standards and Insulation Cable Engineers Association test method for measuring insulation shrinkback, ICEA S-94-649-2021. *Id.* at ¶¶ 41-43.

Prysmian, on the other hand, contends that its wire meets industry standards, while also asking the Court to accept its argument that certain of the insulation shrinkback test methods and industry-accepted standards do not apply to the wire at issue. Memorandum at 10. Shoals, of course, alleges just the opposite. The Sixth Circuit instructs that "[a]t the pleading stage," it is sufficient for a plaintiff to "set forth a factual basis for its allegations by pointing to plausible industry standards" and allege the defendant did not comply with them. *See U.S. ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*, 34 F.4th 507, 515 (6th Cir. 2022). Determining the applicable industry standard and whether the defendant "performed in conformity with that standard" are clearly questions of fact. *Jack Henry & Assocs., Inc. v. BSC, Inc.*, No. 08-292-ART, 2010 WL 3521613, at *6 (E.D. Ky. Sept. 7, 2010); *Rhea ex rel. Rhea v. Brown Mfg. Corp.*, No. 3:08-CV-35, 2010 WL 2572052, at *2 (E.D. Tenn. June 18, 2010) (denying partial summary judgment due to a "genuine issue of material fact regarding whether the tree cutter substantially deviated from the industry standard of safety").

---

Prysmian cites to no provisions in its purported terms and conditions that would mandate the dismissal of Shoals' claims.

As alleged in Shoals' Complaint, Prysmian's specification sheet, upon which Shoals relied in placing orders, expressly represented that Prysmian wire complied with certain industry standards, including UL 44 and UL 4703. *See* Compl. ¶¶ 18, 21-23 & Ex. B. The specification sheet does not contain any carve out or disclaimer indicating that Prysmian was certifying compliance to only some part of these standards. *Id.* at ¶ 21 & Ex B. Of course, the parties will address the applicability of UL 44, UL 4703, and other industry standards, procedures, and expectations during discovery.

Prysmian's focus on UL 44 and UL 4703 purposefully ignores that Shoals has alleged that Prysmian's wire failed to comply not only with the UL standards, but also with Prysmian's own certifications and with other industry standards, procedures, and expectations. *See id.* at ¶¶ 44-62. Indeed, to the extent Prysmian claims that UL 44 and UL 4703 only apply to solid conductor wire as opposed to stranded wire, Shoals has alleged that "[s]tranded wire exhibiting an unacceptable amount of insulation shrinkback does not comply with accepted industry performance, nor does it comply with the pattern and practice between Prysmian and Shoals."[4] *See id.* at ¶ 45. Further, Shoals has alleged Prysmian's wire was defective because it exhibited unacceptable levels of insulation shrinkback, contrary to Prysmian's certifications, representations of quality, its performance specifications, and its knowledge of Shoals' intended use. *See, e.g.*, *id.* at ¶¶ 17, 23, 45, 47, & 106. In light of these allegations, Prysmian cannot prevail on its Motion by simply asking the Court to take its word that its wire meets cited industry standards. Once again, Prysmian disregards the standard applicable to motions to dismiss: it is Shoals' allegations, not Prysmian's retorts, which must be accepted as true at this stage. *See Directv, Inc.*, 487 F.3d at 476; *Jack Henry*

---

[4] Prysmian also argues the ICEA Test does not apply to the wire at issue. Shoals has alleged that test's (and UL's test's) maximum shrinkback allowance is indicative of accepted industry performance, and Prysmian's wire does not meet the performance standard. Compl. ¶ 43.

6

*& Assocs.*, 2010 WL 3521613, at *6. Prysmian's Motion to Dismiss Counts 1, 12, 13 and 14 must be denied.

**II.     Shoals' Tort Claims are Not Subject to Dismissal Under the Economic Loss Rule**

As Prysmian's Motion admits, the economic loss rule permits recovery for damages to "other property" that is injured "as a result of contact with" the defective product.[5] *See Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 466 (Tenn. Ct. App. 2003). As the Complaint makes clear, Shoals' negligence and strict liability claims seek to recover for damages to other property damaged by Prysmian's defective wire, as well as damages arising from any injuries that may be caused by this defective wire, and thus the economic loss rule does not bar these claims.[6] *See* Compl. ¶ 170 (Shoals' negligence claim seeks to recover damages "for any property damage or injury caused by Prysmian's defective product"); ¶ 178 (same for gross negligence); & ¶ 185 (same for strict liability). These allegations are sufficient to state a claim for relief at this early stage in the proceedings.

**III.    Shoals has Pled a Viable Unjust Enrichment Claim**

Shoals has alleged facts and elements sufficient to state an unjust enrichment claim, yet Prysmian argues this claim should be dismissed because an "express contract—General Cable's

---

[5] While Prysmian's case law addresses Kentucky, not Tennessee, law this aspect of the economic loss rule is the same across both states. *Compare Messer Griesheim Indus., Inc.*, 131 S.W.3d at 466, *with Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 849 (6th Cir. 2002) (Kentucky's economic loss rule "permits recovery for damages to property other than the product purchased[.]").

[6] Prysmian's defective wire continues to cause new damage and pose hazards to Shoals' customers and end users' property, and the extent of Shoals' liability for such damage is yet to be determined. (*See also* Compl. ¶ 77 ("[A]t least one affected site has already reported property damage arising from a brushfire, which is believed to have ignited as a result of contact with an exposed conductor in Prysmian red wire."); Compl. ¶ 169 (Prysmian's negligence "proximately caused, and continues to cause, injuries to Shoals, including without limitation for any damages to Shoals' customers and/or end users for which Shoals incurs damages"); & Compl. ¶ 177 (same for gross negligence).)

Terms & Conditions—governs." Memorandum at 12. As discussed above, this is contrary to the allegations of the Complaint, which must be taken to be true for purposes of this Motion.

Furthermore, Shoals is entitled to plead alternative theories of liability, as it has done with its unjust enrichment claim. The Federal Rules of Civil Procedure explicitly allow a plaintiff to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also Phoenix Cap. Grp., LLC v. W. Express Inc.*, No. 3:16-CV-00299, 2017 WL 347573, at *4 (M.D. Tenn. Jan. 24, 2017) ("A party 'may set out 2 or more statements of a claim ... alternatively or hypothetically, . . . . Therefore, the fact that the two counts are mutually exclusive is not a ground to dismiss either count." (quoting Fed. R. Civ. P. 8(d)(2))); *MACTEC, Inc. v. Bechtel Jacobs Co., LLC*, No. 3:05-CV-340, 2007 WL 1891244, at *1 (E.D. Tenn. June 28, 2007) ("Rule 8(e)(2), Federal Rules of Civil Procedure, affords plaintiffs wide latitude in pleading claims in the alternative."). It is also well established in the Sixth Circuit that a plaintiff can plead an alternative claim for unjust enrichment in breach of contract actions. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797 (6th Cir. 2016) (in a breach of contract action, a plaintiff had "properly pled alternative claims" for unjust enrichment); *Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004) ("[T]he Federal Rules of Civil Procedure permit pleading in the alternative and even the pleading of inconsistent claims."); *Phoenix Cap. Grp., LLC*, 2017 WL 347573, at *4 (denying, in part, a motion to dismiss an unjust enrichment claim pled in the alternative to a breach of contract claim); *China Exp. & Credit Ins. Corp. v. Carlisle Transp. Prod. Inc.*, No. 3:16-CV-00846, 2016 WL 4239970, at *3 (M.D. Tenn. Aug. 11, 2016) ("[A] plaintiff may nevertheless properly plead alternative theories of liability, including contract and unjust enrichment theories").

Shoals has so pled here. *See* Compl. ¶ 111 (pleading unjust enrichment "**[i]n the alternative** to Counts II and III") (emphasis added). Prysmian's Motion to Dismiss Shoals' unjust enrichment claim, Count Four, must therefore be denied.

## IV. Shoals has Stated a Viable Claim for Punitive Damages

Prysmian's Motion does not dispute that Tennessee law permits the recovery of punitive damages for intentional breach of contract, intentional misrepresentation, and gross negligence. Nor could it, as Tennessee law is firmly established on that point. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn. 1992) ("[P]unitive damages are available in cases involving fraud, malice, gross negligence, oppression, wrongful acts done with a bad motive or so recklessly as to imply a disregard of social obligations."); *Com. Painting Co., Inc. v. The Weitz Co., LLC,* No. W2013-01989-COA-R3-CV, 2016 WL 3519015, at *12 (Tenn. Ct. App. June 20, 2016) (noting plaintiff may recover punitive damages if it is "successful on its intentional misrepresentation claim"); *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013) (providing that Tennessee law permits recovery of punitive damages in breach of contract cases if "a defendant acted either intentionally, fraudulently, maliciously, or recklessly"). Instead, Prysmian's sole argument is that the punitive damages claim *must* be dismissed because "General Cable Corp. Standard Terms & Conditions" do not allow for punitive damages, nor does Kentucky law that purportedly governs under those terms and conditions. Memorandum at 13. As previously stated, the Court should not consider any of Prysmian's exhibits when ruling on Prysmian's Motion. Here again, the question of which terms and conditions apply to the numerous sales transactions at issue is a factual and legal question that cannot be determined at this stage of the litigation when the parties have not conducted any discovery. Because the allegations set forth in Shoals' Complaint must be deemed true for purposes of this Motion, Prysmian's Motion to Dismiss Shoals' claim for punitive damages must be denied.

## CONCLUSION

For the foregoing reasons, Prysmian's Motion to Dismiss must be denied.

DATED: January 31, 2024

Respectfully submitted,

*/s/ Jessalyn H. Zeigler*
Jessalyn H. Zeigler (TN Bar No. 016139)
Jeffrey Gibson (TN Bar No. 026321)
Courtney A. Hunter (TN Bar No. 038014)
**BASS, BERRY, & SIMS PLC**
150 Third Avenue South Suite 2800
Nashville, TN 37201
(615) 742-6289
jzeigler@bassberry.com
jgibson@bassberry.com
courtney.hunter@bassberry.com

Jim Manley (admitted *pro hac vice*)
Jill Kuhn (admitted *pro hac vice*)
**Troutman Pepper Hamilton Sanders LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
(404) 885-3000
Jim.Manley@Troutman.com
Jill.Kuhn@Troutman.com

*Attorneys for Plaintiff Shoals Technologies Group, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing upon the following:

Lucas T. Elliot (BPR # 037084)
Elle G. Kern (BPR # 034301)
FROST BROWN TODD LLP
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
Telephone: (615) 251-5550
lelliot@fbtlaw.com
ekern@fbtlaw.com

Cullen G. Pick (admitted *pro hac vice*)
David J. Levy (admitted *pro hac vice*)
Morgan, Lewis & Bockius
1000 Louisiana
Suite 4000
Houston, TX 77002
Telephone: (713) 890-5000
cullin.pick@morganlewis.com
david.levy@morganlewis.com

Deanne Miller (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071
Telephone: (213) 612-2500
deanne.miller@morganlewis.com

*Attorneys for Defendant Prysmian Cables and Systems USA, LLC*

*Jessalyn H. Zeigler*