UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRYSMIAN CABLES AND SYSTEMS USA, LLC <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 3:23-cv-01153 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

## PLAINTIFF SHOALS TECHNOLOGIES GROUP LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR JURY TRIAL

Plaintiff Shoals Technologies Group, LLC ("Shoals") has moved this Court for a trial by jury of all issues in this matter pursuant to Local Rule 7.01 and Rule 39(b) of the Federal Rules of Civil Procedure. Shoals has learned new facts through discovery about Prysmian Cables and Systems USA, LLC's ("Prysmian") conduct that make the case particularly well-suited for trial by jury. Shoals asks the Court to exercise its discretion under Fed. R. Civ. P. 39(b) and order a jury trial.

## FACTS

A.     <u>Shoals Incurs Costs Because of Exposed Copper Conductor in Customers' Solar Fields</u>

In 2022, Shoals began receiving reports from its customers of exposed copper conductor on wire harnesses installed in their solar fields that had been made with red wire that Shoals had purchased from Prysmian. It became evident over time that Prysmian's wire was defectively manufactured and unable to conform to industry standards and expectations, product

specifications, or product warranties. Specifically, Prysmian's wire's insulation contracts to an unacceptable degree and leaves the wire's conductor exposed, a defect known as "shrinkback."

Investigating the extent of the shrinkback issue has proven costly for Shoals—Shoals has had to hire third parties to investigate and to conduct on-the-ground monitoring and drone imaging. These investigations have involved both projects with known issues as well as full-field inspections for some customers who encountered shrinkback.

Remediating the shrinkback issue has also been costly for Shoals. Shoals has incurred significant costs to remediate shrinkback issues and replace affected harnesses, and it has had to divert resources that it would otherwise devote to other areas of its business.

B.  The Pleadings and Case Management Order

To recover the investigation and remediation costs and other damages it had already incurred and will likely incur in the future because of Prysmian's defective wire, on October 31, 2023, Shoals filed its Complaint against Prysmian. In the Complaint (Dkt. No. 1), Shoals asserted claims based on the Tennessee Products Liability Act, breach of contract, unjust enrichment, breach of implied covenant of good faith and fair dealing, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, express indemnity, equitable indemnity, intentional misrepresentation, negligence, gross negligence, and strict liability. On December 22, 2023, Prysmian filed its Answer, Affirmative Defenses and Counterclaims (Dkt. No. 21), seeking a declaratory judgment relating to the terms and conditions governing the parties' transactions and Prysmian's liability to Shoals relating to the wire at issue in the Complaint and asserting claims based on breach of contract and defamation. On December 4, 2024, Shoals filed its First Amended Complaint (Dkt. No. 57), which incorporated new facts that Shoals had learned during discovery regarding Prysmian's defective wire, the

number of solar sites reporting unacceptable levels of shrinkback in Prysmian wire, Prysmian's historical knowledge regarding unacceptable levels of shrinkback in its wire, and the parties' transactions. Neither Shoals nor Prysmian demanded a jury trial in its pleadings.

On September 29, 2025, the Court entered the Fourth Modified Case Management Order (Dkt. No. 81). Pursuant to that order, fact and written discovery closed on October 31, 2025; expert witness disclosures are due on November 17, 2025 (for Plaintiff and Counter-Plaintiff), and January 15, 2026 (for Defendant and Counter-Defendant); and the deadline to complete expert depositions is March 2, 2026. *Id.* The deadline for filing dispositive motions is February 27, 2026. The case is set for trial on August 11, 2026. (Dkt. No. 68)

    C.    <u>Shoals Discovers Information Showing Prysmian's Bad Faith, Intentional Misrepresentations, and Gross Negligence</u>

Unbeknownst to Shoals until discovery, Prysmian knew long before 2022 that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Discovery has also revealed that Prysmian's own engineers thought ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. For example, Shoals has learned that shortly after Shoals informed Prysmian about reports of exposed copper conductor on harnesses made with Prysmian wire at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. A, PRYSMIAN00048835). Shoals also learned that another of Prysmian's engineers ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. B, PRYSMIAN00025981). Documents Prysmian

produced during discovery show that this engineer ██████████████████████████

████████████████████████████████████████ *Id.* Upon learning this

information, this engineer ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██. *Id.*

Through discovery, Shoals also learned that the site inspection report Prysmian provided

to Shoals about ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. C, PRYSMIAN00077222). The second

report concluded that there was █ ████████████████████████████████

████████████████████████ (Ex. D, PRYSMIAN00077230). Prysmian did not provide either of

these internal reports to Shoals until the summary of this year, well into the discovery opened.

Shoals also learned for the first time during discovery that Prysmian was ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*See, e.g.*, Ex. E,

PRYSMIAN00002052). Prysmian never told Shoals that ████████████████████████

████████████████████████████████████████████████████████████████

4
Case 3:23-cv-01153   Document 89   Filed 11/14/25   Page 4 of 11 PageID #: 1125

(*See, e.g.*, Ex. F, PRYSMIAN00005773). In fact, documents produced during discovery show that

███████████████████████████████████████████████████████████████████████████.

Because of this and other newly discovered evidence demonstrating the pervasiveness of Prysmian's gross negligence, misrepresentations, and efforts to conceal the true facts from Shoals,[1] Shoals has filed this motion to exercise its constitutional right to have a jury decide its claims.

## LAW AND ARGUMENT

The Seventh Amendment to the United States Constitution protects "the right of trial by jury" for "[s]uits at common law." U.S. Const. amend. VII. Suits like this one that seek money damages are legal in nature, thus implicating the Seventh Amendment right to a jury. *See, e.g., SEC v. Jarkesy*, 603 U.S. 109, 122–23 (2024).

Because of the importance of the constitutional right to trial by jury, Fed. R. Civ. P. 39(b) gives a district court the discretion to "on motion, order a jury trial on any issue for which a jury might have been demanded." Sixth Circuit case law makes clear that a district court has the discretion to order a jury trial even when the parties have failed to demand one in a timely manner. *See, e.g., Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1013 (6th Cir. 1987) (affirming district court's "granting of late motion for a jury trial"); *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 207 (6th Cir. 1990) (affirming district court's grant of jury when "case was pending over a year on the non-jury docket pursuant to the district court's scheduling order following [plaintiff's] failure to request a jury trial"); *DeAngelis Diamond Constr., LLC v. Rogers Mfg. Corp.*, 2022 WL 20091657, at *1 (M.D. Tenn. Oct. 25, 2022) (granting motion for jury trial filed more than a year after case initiated).

---

[1] The exhibits provided herein are just examples of the evidence Prysmian concealed from Shoals until discovery.

Because of the importance of the right to a jury, the Sixth Circuit has described Fed. R. Civ. P. 39(b)'s grant of discretion as "broad" and instructed district courts to exercise that discretion "in favor of granting a jury trial 'in the absence of strong and compelling reasons to the contrary.'" *Kitchen*, 825 F.2d at 1013; *see Moody*, 915 F.2d at 207; *see also McKnuckles v. Centerstone of Am.*, 2018 WL 6696992, at *2 (M.D. Tenn. Dec. 20, 2018) ("[T]he Sixth Circuit directs that courts should 'lean in favor' of granting a Rule 39(b) motion absent 'strong[,] compelling reasons to the contrary.'"); *Davis-Watkins Co. v. Serv. Merch. Co.*, 500 F. Supp. 1244, 1252 (M.D. Tenn. 1980) ("The civil jury trial was provided for in the Bill of Rights to the United States Constitution and has been a hallmark of the English and American system of justice for centuries. A discretionary request for a jury trial should not be denied unless compelling reasons support the denial.").

In the Sixth Circuit, the non-moving party's failure to prove "discernable prejudice" is enough by itself to justify granting a Fed. R. Civ. P. 39(b) motion. *DeAngelis Diamond Constr.*, 2022 WL 20091657, at *1 (non-moving party's failure to prove discernable prejudice was alone sufficient grounds to grant motion for jury trial); *Barron v. Bankers Life & Cas. Co.*, 288 F.R.D. 187, 191 (W.D. Tenn. 2012) ("Although courts have employed various factors in exercising the discretion granted to them under Rule 39(b), the Sixth Circuit has found that a 'failure [by the party opposing trial by jury] to show discernable prejudice' is alone sufficient to justify granting a late demand for a jury trial in an exercise of Rule 39(b) discretion."); *see also Blount v. Whole Foods Mkt. Downtown Nashville*, 2024 WL 4701883, at *3 (M.D. Tenn. Nov. 6, 2024) ("[I]n the absence of undue prejudice to Whole Foods, the Court will exercise its discretion under Rule 39(b) to grant Blount's second motion for a jury trial."). And district courts within the Sixth Circuit have made clear that proving prejudice is a heavy burden for the non-moving party. *See Blount*, 2024

WL 4701883, at *3 (increased cost and time required for jury trial was not alone sufficient prejudice to defeat Fed. R. Civ. P. 39(b) motion); *McKnuckles*, 2018 WL 6696992, at *3 (same).

Prysmian cannot prove that it would suffer any prejudice from this case being heard by a jury, much less any prejudice that would warrant denying Shoals its constitutional right to a jury trial. Expert discovery is ongoing, the parties have not filed motions for summary judgment, and the trial is nine months away. Thus, Prysmian has ample time to make any adjustments to its trial strategy. *DeAngelis Diamond Constr.*, 2022 WL 20091657, at *1.

Although Sixth Circuit case law does not require a court to consider any factors other than prejudice to the non-movant in deciding whether to grant a jury trial under Rule 39(b), the Sixth Circuit has stated that it "do[es] not disagree" that the following factors can be relevant to a district court's exercise of its discretion:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

*See Moody,* 915 F.2d at 207 ("While we do not disagree with the factors set out in *Parrott*, we note that in *Kitchen* it was necessary to discuss only one of the factors set out in *Parrott*, namely prejudice to the nonmovant."); *Devs. Diversified of Tennessee, Inc. v. Tokio Marine & Fire Ins. Co.*, 2015 WL 13528477, at *3 (M.D. Tenn. Mar. 17, 2015) (stating that *Moody* permits district court to consider other factors in addition to prejudice to the nonmovant and listing *Parrott* factors). These other factors also weigh in favor of allowing Shoals to exercise its constitutional right to a jury trial.

*First*, this case involves issues that are best tried to a jury. *See Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983). Contractual and tort claims are best decided by a jury. *See, e.g., Nview*

*Health, Inc. v. Sheehan*, 2022 WL 17782478, at *3 (M.D. Fla. Dec. 19, 2022) ("This case involves contractual and tort claims for damages that are best decided by a jury."); *Owners Ins. Co. v. Keeble,* 2021 WL 4765487, at *1 (M.D. Ala. Oct. 12, 2021) (finding matter where factual disputes exist are "best tried to a jury"); *Solugen Inc. v. M3 Chem. Grp. LLC*, 529 F. Supp. 3d 685, 691 (S.D. Tex. 2021) (breach of contract actions are "naturally well-suited for consideration by a jury"). Moreover, based on the documents produced in discovery, ████████████████████ ██████████████████████████████████ creates additional concerns regarding Prysmian's conduct during the contractual relationship. A jury should determine the credibility of Prysmian's witnesses and evaluate its actions with respect to concealing pertinent information from Shoals. And even if this case may involve complex facts, that is no reason to deny a Rule 39(b) jury demand. *See Davis-Watkins Co.*, 500 F. Supp. at 1251–52 (rejecting argument that Rule 39(b) requires a judge to deny an untimely jury demand due to case's complexity). As such, the first factor weighs in favor of allowing a jury trial.

*Second*, granting Shoals' request for a jury trial would not disrupt the Court's schedule. Expert disclosures and depositions are still forthcoming—as are motions for summary judgment and motions in limine—and trial is not for another nine months (August 11, 2026). Courts may exercise their discretion and allow a jury trial at any point before trial, provided the circumstances justify granting the demand. *See Judge v. Continental Cas. Co.*, 93 F.R.D. 372, 375–76 (E.D. Tenn. 1981) ("discretion to allow a trial by jury should not be withheld merely because an opposing party claims it has 'come too late'") (citing *Hensley v. Ellenburg*, 57 F.R.D. 212, 213 (E.D. Tenn. 1972)). Nine months is an ample amount of time for Prysmian to prepare its case for a jury trial.

*Third*, the length of the delay in requesting a jury trial is minimal. *See McDonough v. Memphis Radiological Pro. Corp.*, 2008 WL 4560674, at *1 (W.D. Tenn. Oct. 8, 2008) (granting

Rule 39(b) motion when jury demand was made four years following the original complaint). Shoals filed its First Amended Complaint on December 4, 2024, less than twelve months ago. At that point, Prysmian had only made nine of its thirty-four document productions and **none** of the depositions had taken place. Since March of 2025, the parties have taken the fact depositions of 36 witnesses—with the depositions of 14 Prysmian's witnesses occurring in the last four months alone—and 30(b)(6) depositions. Because of the volume of documents produced by the parties, and Prysmian's delay in producing documents from its Research and Development and Quality teams, the pervasiveness of Prysmian's bad faith, intentional misrepresentations, and gross negligence became apparent when Prysmian's witnesses were deposed. Given that fact discovery closes on October 31, 2025, Shoals has not delayed in requesting a jury trial.

*Fourth,* and finally, Shoals has a valid reason for any argument of alleged "tardiness" in demanding a jury trial. As discussed above, documents unearthed during the discovery process and deposition testimony from Prysmian's witnesses reveal that Prysmian knew that its wire was defective and intentionally hid that fact from Shoals, thereby exposing employees of Shoals' customers and the public to the risk of bodily harm. Citizens of Tennessee should be permitted to hear the issues in this case.

**CONCLUSION**

For the foregoing reasons, Shoals' Motion for a Jury Trial should be granted.

Dated: November 14, 2025.

Respectfully Submitted,

*/s/ Jessalyn H. Zeigler*
Jessalyn H. Zeigler (TN Bar No. 016139)
Courtney A. Hunter (TN Bar No. 038014)
Briana T. Sprick Schuster (TN Bar No. 038305)
Kathryn H. Walker (TN Bar. No. 020794)
**BASS, BERRY, & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, TN 37203
(615) 742-6289
jzeigler@bassberry.com
courtney.hunter@bassberry.com
briana.sprick.schuster@bassberry.com
kwalker@bassberry.com

Jim Manley (admitted *pro hac vice*)
Jill Kuhn (admitted *pro hac vice*)
**Troutman Pepper Locke LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
(404) 885-3000
Jim.Manley@Troutman.com
Jill.Kuhn@Troutman.com

*Attorneys for Plaintiff Shoals Technologies Group, LLC*

10
Case 3:23-cv-01153   Document 89   Filed 11/14/25   Page 10 of 11 PageID #: 1131

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing upon the following:

Lucas T. Elliot
Elle G. Kern
**FROST BROWN TODD LLP**
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
Telephone: (615) 251-5550
lelliot@fbtlaw.com
ekern@fbtlaw.com

**MORGAN, LEWIS & BOCKIUS LLP**
David J. Levy (admitted *pro hac vice*)
Cullen G. Pick (admitted *pro hac vice*)
Susan Stradley (admitted *pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
713.890.5000 (telephone)
david.levy@morganlewis.com
cullen.pick@morganlewis.com
susan.stradley@morganlewis.com

Deanne L. Miller (admitted *pro hac vice*)
300 South Grand Ave. 22nd Floor
Los Angeles, CA 90071
213.612.2500 (Telephone)
deanne.miller@morganlewis.com

Cecilia M. Bole (admitted *pro hac vice*)
110 N. Wacker Drive, Ste 2800
Chicago, IL 60606
(617) 341-7509
cecilia.bole@morganlewis.com

                                                             */s/ Jessalyn H. Zeigler*