UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRYSMIAN CABLES AND SYSTEMS USA, LLC <br><br> Defendant. | Case No.: 3:23-cv-01153 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

**PRYSMIAN'S OPPOSITION TO SHOALS' MOTION FOR JURY TRIAL**

Defendant/Counter-Plaintiff Prysmian Cables and Systems USA, LLC ("Prysmian") files this Opposition to Plaintiff/Counter-Defendant Shoals Technologies Group, LLC's ("Shoals") Motion for Jury Trial and Supporting Memorandum (Dkt. No. 85, "Motion"; Dkt. No. 86, "Memorandum"). For the reasons stated below, this Court should deny Shoals' Motion.

### I. INTRODUCTION

Granting Shoals' Motion and rescheduling this case for a jury trial would unfairly prejudice Prysmian and reward Shoals' gamesmanship. Shoals waited to file the Motion until after the last deposition concluded on the last day of fact discovery. This was *two years* after Shoals filed this lawsuit and designated it as a non-jury case; more than *nineteen months* after this Court first set this case for trial as a bench trial; and more than *ten months* after Shoals' deadline to demand a jury trial under Rule 38 expired.

Shoals' repeated representations to this Court and to Prysmian that this will be a bench trial, and Shoals' waiver of a jury demand under Rule 38, made sense given the complex technical

and damages issues in this case. Accordingly, for the life of this case, Prysmian has tailored its discovery and litigation strategy toward a bench trial.

That strategy (which included taking and defending nearly 50 depositions) will be undone if this case is now tried to a jury, not to mention the additional cost and delay of a jury trial. Though the Sixth Circuit has said that a "court's discretion should be exercised in favor of granting a jury trial 'in the absence of strong and compelling reasons to the contrary[;]'" the facts here present strong and compelling reasons, including undeniable prejudice to Prysmian, that mandate denying Shoals' Motion. *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1013 (6th Cir. 1987) (citation omitted).

Shoals has no justification for waiting so long to request a jury trial. First, if obtaining new evidence during discovery was sufficient to seek a jury trial at the close of discovery, then Rule 38 would become meaningless. Second, even if "newly discovered evidence" could form the basis of a legitimate request for a jury trial under Rule 39, the evidence Shoals references in its Memorandum is not "newly discovered." Prysmian produced most of the exhibits Shoals attached to its Motion ***between June and September 2024***—months before Shoals filed its First Amended Complaint in December 2024 and nearly a year before Shoals deposed any Prysmian witness (and asked them about many of the documents). Indeed, Shoals alluded to this alleged "newly discovered evidence" in its First Amended Complaint nearly a year ago, and Prysmian explained in its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (filed in January 2025) why Prysmian is still not liable and that its PV wire was not defective and complied with all applicable standards, contracts, and laws. (*See* Dkt. Nos. 57 and 60.)

2

## II. BACKGROUND FACTS AND RELEVANT CASE HISTORY

### A. Shoals Repeatedly Requested a Bench Trial and Completed Fact Discovery before Requesting a Jury Trial.

Shoals filed this lawsuit on October 31, 2023, asserting 14 causes of action against Prysmian under breach of contract, breach of warranty, and various tort theories, and simultaneously specified this case would not be tried to a jury. (Dkt. No. 1, Complaint; Dkt. No. 1-1, Civil Cover Sheet.) Shoals subsequently reaffirmed its choice of a bench trial by deciding not to demand a jury after Prysmian filed its answer and counterclaims in December 2023 (Dkt. No, 21); after Shoals filed its answer to Prysmian's counterclaims in February 2024 (Dkt No. 31); after Shoals filed it First Amended Complaint in December 2024 (Dkt. Nos. 54 and 57); and after Prysmian filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint in January 2025 (Dkt. No. 60).

The below timeline lists some of the communications, filings, and orders reiterating the parties' agreement to try this case as a *bench* trial:

- **December 21, 2023**. Shoals' counsel drafted an Initial Case Management Order that specified this would be a "bench trial." (Ex. A, Shoals' Email to Prysmian and Attached Proposed CMO, § O.)

- **January 8, 2024**. The parties jointly proposed an Initial Case Management Order to this Court, stating that "[t]he bench trial of this action is expected to last approximately 10 trial days." (Dkt. No. 25, Proposed Initial Case Management Order, § O.)

- **March 5, 2024**. Magistrate Judge Holmes entered the parties' proposed Initial Case Management Order, noting that "[t]he **BENCH** trial of this action is expected to last **approximately 10 trial days**." (Dkt. No. 39, Initial Case Management Order, § O (emphasis original).)

- **March 20, 2024**. This Court entered an Order setting the case for a bench trial on December 9, 2025. (Dkt. No. 46, Order.)

- **September 12, 2024**. The parties jointly filed a Motion to Modify the Initial Case Management Order. (Dkt. No. 50, Motion to Modify Initial CMO.) The motion, which Shoals drafted, states "[t]his matter is a complex products liability lawsuit" that is "highly

3
Case 3:23-cv-01153    Document 90    Filed 11/14/25    Page 3 of 18 PageID #: 1227

technical in nature[.]" (*Id*., ¶¶ 1, 5.) The accompanying proposed modified CMO, which Shoals drafted, again specified: "The **Bench** trial of this action is expected to last **approximately 10 trial days**." (*Id*., § O (emphasis original).)

- **September 16, 2024**. This Court granted the parties' Motion to Modify the Initial Case Management Order and continued the "bench trial in this matter" to May 12, 2026. (Dkt. No. 51, Order.)

- **December 4, 2024**. Shoals filed its First Amended Complaint, which did not include a jury demand or any new causes of action; rather, the First Amended Complaint primarily included modifications to the "Factual Background." (Dkt. No. 57, First Amended Complaint.)

- **February 28, 2025**. The parties jointly filed a second Motion to Modify the Initial Case Management Order. (Dkt. No. 65, Motion to Modify Initial CMO.) The motion, which Shoals drafted, acknowledges again this action's "complex" and "highly technical" nature. (*Id*., ¶¶ 1, 8.)

- **March 7, 2025**. The parties jointly filed a Motion to Continue Trial, which Shoals drafted and did not mention a jury trial. (Dkt. No. 67, Motion to Continue Trial.)

- **March 17, 2025**. This Court entered an Order continuing "the bench trial" until August 11, 2026. (Dkt. No. 68, Order.)

- **September 5, 2025**. Shoals filed Plaintiff's Motion to Amend the Third Modified Case Management Order, which again noted the complexity and "highly technical nature of the case," but stated in a footnote that "Shoals is preparing a motion to add a jury demand and a Motion for Leave to Amend the Complaint to conform to the evidence obtained to date." (Dkt. No. 73, Motion to Amend Third Modified Case Management Order, n.1.) Shoals also filed an opposed motion to continue the trial date, and noted that while it was set as a bench trial, Shoals intended to file a "motion to add a jury demand and [a second] amended complaint." (Dkt. No. 74, Motion to Continue Trial Date.)

Shoals never filed a (second) motion for leave to amend its complaint. Instead, at 5:51 PM Central Time on **October 31, 2025**, Shoals filed its Rule 39(b) Motion for a jury trial. Not coincidentally, October 31, 2025, was also the deadline to complete all fact discovery. (Dkt. No. 81, Fourth Amended Case Management Order.)[1] Indeed, Shoals waited until after the final fact

---

[1] Until the Case Management Order was amended on September 29, 2025, the deadline for completing fact discovery was September 15, 2025, and the deadline for Shoals to disclose experts on claims where Shoals has the burden of proof was October 15, 2025.

witness deposition (a deposition of Prysmian's corporate representative) was completed on October 31 to raise the issue of Shoals' instant Motion and Motion to Seal in a hurried attempt to "confer" with Prysmian before filing. Shoals did not provide Prysmian with a draft of the Motion or the documents that Shoals intended to file under seal.

Prior to Shoals requesting a jury trial, the parties exchanged nearly 2.5 million documents (approximately 124 gigabytes), took 45 depositions, hired experts who will soon disclose their opinions, and arranged mediation for mid-December 2025, all under the belief (at least in Prysmian's case) that the parties would try this as a bench trial.

### B. Shoals has Long Possessed the "New" Evidence it Claims Justifies its Late Request for a Jury Trial.

Shoals fails to explain how it is entitled to request a jury at this late stage of the case based on evidence obtained through discovery in litigation. (Dkt. No. 86, Memorandum, p. 5.)[2] And even if Shoals could provide such an explanation, Prysmian produced most of the documents Shoals cites as "newly discovered evidence" in 2024—before Shoals amended its complaint in late-2024 and more than a year before Shoals requested a jury trial. (*See* Dkt. No. 86, Memorandum, pp. 3–5.) Indeed, Shoals acknowledges that in its First Amended Complaint, Shoals incorporated, among other things, allegations regarding "new facts that Shoals had learned

---

[2] This is because Shoals' Motion is premised on multiple misrepresentations. Shoals' claim that "[u]nbeknownst to Shoals until discovery … in an apparent attempt to guard against this known risk of insulation shrinkback, Prysmian changed the insulation compound in its photovoltaic wire and made adjustments to its manufacturing processes" is not accurate. (Dkt. No. 86, Memorandum, p. 3.) Prysmian notified Shoals of the "change[] in insulation compound" to combat shrinkback in January 2017, which Shoals has acknowledged during this lawsuit. Shoals' claim that it "also learned for the first time during discovery that Prysmian was conducting an internal investigation through 2022 that it hid from Shoals" is also incorrect. For example, Prysmian and Shoals met in person in December 2022 and January 2023 to discuss Prysmian's investigation, culminating in Prysmian presenting extensive internal shrinkback testing data to Shoals on January 10, 2023, a presentation ***Shoals attached to its Original and First Amended Complaints***. (Dkt. No. 1-13; Dkt. No. 57-12.)

during discovery regarding … Prysmian's historical knowledge regarding unacceptable levels of shrinkback in its wire …." (*Id.* at pp. 2–3.)

The timeline below details when Prysmian produced the documents cited in Shoals' Memorandum, and when Shoals used them during depositions.

- **June 26, 2024**. Prysmian produced Exhibit E to Shoals' Memorandum. Shoals introduced this document in *seven* depositions of Prysmian's witnesses, including the first deposition Shoals took on May 28, 2025.

- **July 30, 2024**. Prysmian produced Exhibit F to Shoals' Memorandum. Shoals introduced this document in *ten* depositions of Prysmian's witnesses, including the deposition Shoals took on May 28, 2025.

- **August 21, 2024**. Prysmian produced Exhibit B to Shoals' Memorandum. Shoals introduced this document in *nine* depositions of Prysmian's witnesses, including the deposition Shoals took on May 28, 2025.

- **September 19, 2024**. Prysmian produced Exhibit A to Shoals' Memorandum. Shoals introduced this document in *eight* depositions of Prysmian's witnesses, including the deposition Shoals took on May 28, 2025.

- **August 1, 2025**. Prysmian produced Exhibits C and D to Shoals' Memorandum (after resolving claims of privilege without the need for Court intervention). Shoals introduced Exhibit C in *five* depositions and Exhibit D in *three* depositions starting with a Prysmian witness's deposition on August 13, 2025.

The documents Prysmian produced in August 2025 (Memorandum Exhibits C and D) are merely some of the internal tests conducted by Prysmian in response to some of the early complaints by Shoals in 2022 regarding exposed conductor on some of Shoals' installed harnesses. Importantly, the reports within both exhibits are largely duplicative of one another, and Prysmian produced the report within Exhibit D (PRYSMIAN00077235-42) on **February 21, 2025**. Shoals' counsel introduced the report as an exhibit in the first deposition of a Prysmian witness—the same witness who authored the report—on May 28, 2025. At most, these documents suggest there was insufficient evidence to determine a root cause for the exposed conductor in Shoals' harnesses by April 2022, and critically, the documents do not reflect any shrinkback testing data. Rather, the

6

documents suggest that Shoals' molded connectors were not designed or manufactured to properly bond to Prysmian's wire—an opinion and theory as to what caused exposed conductor that Prysmian has repeatedly expressed during this litigation. Regardless, nothing in these documents constitutes "new evidence" that would excuse a late-filed jury demand.[3]

Indeed, it will be up to the expert witnesses in this case to opine on whether the root cause(s) of the exposed conductors was bad installation (as Shoals' own employees and experts initially concluded), porous undermolds manufactured by Shoals (as Shoals' expert witness firm opined on behalf of Shoals' customer in May and June 2023), or "bad" wire manufactured by Prysmian—or some combination of those or other causes. (Prysmian denies that its wire was defective or was in any way non-conforming to applicable specifications, a position supported by expert consultants Shoals hired before the lawsuit.) Presenting these opinions at trial will include a highly technical analysis of the design, manufacture, and use of Prysmian's wire and Shoals' wire harness system, including an analysis and explanation of numerous complex test methods, which will not be easily understood by a lay juror. In short, this scientifically complicated dispute is not well suited for a jury trial.

### III.  ARGUMENT & AUTHORITIES

**A.  Granting Shoals' Late Request for a Jury Trial Will Unfairly Prejudice Prysmian.**

Rule 38 allows a party to demand a jury trial if it makes a written demand "no later than 14 days after the last pleading directed to the issue"; but, notwithstanding the Seventh Amendment to the Constitution, states that "[a] party waives a jury trial unless a demand is properly served and

---

[3] Shoals included a catch-all footnote in its Memorandum claiming "[t]he exhibits herein are just examples of the evidence Prysmian concealed from Shoals until discovery." (Dkt. No. 86, Memorandum, n.1) Presumably, Exhibits A-F are the best "examples" that Shoals could come up with to support its Motion; and, as shown, these documents do not support any misconduct by Prysmian or justify the late jury demand by Shoals.

filed." Fed. R. Civ. P. 38(b) and (d). While Rule 39 allows the court to order a jury trial when no timely demand is made under Rule 38, it is well-settled in the Sixth Circuit that unfair prejudice to the non-movant alone warrants denial of a Rule 39(b) motion. Fed. R. Civ. P. 39(b); *Moody v. Pepsi-Cola Metro. Bottling Co., Inc.*, 915 F.2d 201, 207 (6th Cir. 1990) ("While we do not disagree with the factors set out in *Parrott,* we note that in *Kitchen* it was necessary to discuss only one of the factors set out in *Parrott*; namely, prejudice to the nonmovant."). Granting Shoals' request for a jury trial—made after the last deposition concluded on the last day of fact discovery and two years after filing the lawsuit—will indisputably prejudice Prysmian.

From the outset of this litigation, Prysmian's case strategy has been informed by Shoals' choice to have a bench trial. Prysmian has conducted substantial discovery—including 45 total depositions—with this in mind. For example, it impacted who Prysmian chose to depose, and how; and what written discovery Prysmian propounded. Additionally, beginning with the first Prysmian deposition and continuing with nearly all subsequent Prysmian depositions, Prysmian's counsel agreed to Shoals' counsel's request to have a running objection to every question, thus allowing Shoals' counsel to question Prysmian's witnesses unimpeded.[4] Prysmian would not have granted Shoals' request had it known this case would be tried to a jury. Shoals' counsel ***did not*** give Prysmian's counsel the same courtesy when requested, which now suggests that Shoals intentionally misled Prysmian to believe this would be a bench trial.[5]

---

[4] (**Shoals' Counsel**): David, if you prefer, you can have a standing objection to form. (**Prysmian's Counsel**): Okay. (Tim Clancy Dep., 272:7–9 (first Prysmian witness deposed)).

[5] (**Prysmian's Counsel**): Okay. So I thought that we were going to just waive the objections to form, and, you know, that they're all preserved for trial. We can do that. Is that okay? (**Shoals' Counsel**): I'm going to object to form when I feel like I need to throughout the deposition. (**Prysmian's Counsel**): Okay. So then—then we don't have the same agreement that we have in other depositions, which is fine, it's your right to do that. (**Shoals' Counsel**): Right. (Nick Valcho Dep., 9:19–10:4.)

The fact this would be a bench trial also influenced *how* Prysmian deposed fact witnesses, particularly the third-party witnesses and numerous *former Shoals employees*, some of whom are not under this Court's trial subpoena power. Fact discovery is over and Prysmian cannot backtrack and re-conduct depositions or written discovery with the idea it will try this case to a jury.

Additionally, Prysmian engaged experts at the outset of this matter, all of whom have prepared their analyses under the assumption they would present their interpretation of the evidence and conclusions to this Court—not a jury. The parties' respective expert disclosure deadlines are approaching and depending on the timing of a ruling on Shoals' Motion, Prysmian's experts will prepare reports *without knowing whether this is a bench or jury trial*. Again, this prejudices Prysmian.

Courts must consider the stage of discovery when determining whether prejudice exists to warrant denying a Rule 39(b) motion. Indeed, the court in *Nationwide Life Ins. Co.* denied a Rule 39(b) motion *shortly after* discovery began, finding prejudice because the non-moving party had already planned discovery knowing it would present its case to the judge. *See Nationwide Life Ins. Co. v. Penn-Mont Benefits Servs., Inc.*, No. 2:05-cv-1066, 2006 WL 8424005, at *2 (S.D. Ohio June 21, 2006) ("[P]rejudice to Nationwide also weighs against granting the motion. Although this litigation is in its early stages, Nationwide has been planning discovery on the belief that this would be a bench trial and would now have to restructure its case to be more accommodating to a presentation to a jury."). The circumstances here far exceed those in *Nationwide*.

Additionally, *McKnuckles v. Centerstone of Am.*, which Shoals cites, supports *denying* Shoals' Motion. No. 3:16-cv-02916, 2018 WL 6696992, at *2 (M.D. Tenn. Dec. 20, 2018) (Mag. J. Alistair E. Newman). The *McKnuckles* court granted the plaintiff's Rule 39(b) motion but specifically noted that the plaintiff requested a jury "just [as the defendant] mailed its first set of

9
Case 3:23-cv-01153   Document 90   Filed 11/14/25   Page 9 of 18 PageID #: 1233

discovery requests and had 'not otherwise begun the discovery process . . . .'" *Id*. at *3. The court also acknowledged that because the defendant "was on notice at the ***outset of its discovery efforts*** that this case might be tried by a jury, [the defendant] should not be prejudiced" by granting the motion. *Id*. (emphasis added). The differences between *McKnuckles* and this case are stark—the parties in this case served their first sets of written discovery over 18 months ago, fact discovery is closed, and Prysmian was not "on notice" that this case might be tried to a jury until the two-year anniversary of its filing. Allowing a jury trial at this stage would unduly prejudice Prysmian for this reason alone.

Another court considered similar facts to those present here and denied a plaintiff's Rule 39(b) motion because it would unfairly prejudice the defendant. In *Avondale Indus., Inc. v. Tyco Valves & Controls, Inc.*, the court acknowledged that "[t]he parties have indicated that ten depositions had already been taken in the case" and "***[t]he format in which counsel take a deposition in anticipation of a bench trial as opposed to a jury trial differs***." No. CIV.A. 01-2923, 2003 WL 21634587, at *5 (E.D. La. July 3, 2003) (emphasis added). The court further explained:

> [P]laintiff first filed suit in this Court nearly two years ago and could have sought a jury trial at that time. However, it did not do so. Plaintiff claims that it was only aware of the new facts favoring a jury trial in March 2003 when it received discovery. Yet, again, plaintiffs waited two months before making any mention of the possibility of a jury trial, including the time it filed its second amended complaint. Furthermore, counsel's reason for belatedly requesting a jury trial (the discovery of additional facts) is not well taken; after all, the very purpose of discovery is to ascertain facts regarding the trial of the case.

*Id*. The *Avondale* court's rationale applies equally here. Shoals filed this lawsuit over two years ago and could have sought a jury trial at that time. Shoals waited more than a year after discovering its allegedly "new" evidence to request a jury trial despite possessing this evidence when it filed its First Amended Complaint. And even if Shoals had not waited until after the discovery of certain

10

evidence, the *Avondale* court explained that obtaining discovery alone is not a legitimate reason for requesting a jury trial.

    **B.**    **The *Parrott* Factors Support Denying Shoals' Motion**.

Shoals is correct that Sixth Circuit courts interpret *Moody v.Pepsi-Cola Metro. Bottling. Co* [6] to permit consideration of all *Parrott v. Wilson*[7] factors. *See Devs. Diversified of Tennessee, Inc. v. Tokio Marine & Fire Ins. Co.*, No. 3:04-0015, 2015 WL 13528477, at *3 (M.D. Tenn. Mar. 17, 2015) (Mag. J. E. Clifton Knowles) (interpreting *Moody* to allow consideration of all *Parrott* factors). However, the analysis in *Devs. Diversified*, which Shoals relies on, underscores that Shoals' Motion should be ***denied***. The *Devs. Diversified* court discussed all *Parrott* factors excluding factor two (whether granting the Rule 39(b) motion would disrupt the court's or defendant's schedule) and ***denied*** the plaintiff's motion based on a factual record similar to the one here. *Id.* at *6. As detailed below, every *Parrott* factor (in addition to *Parrott* factor three, the unfair prejudice to Prysmian, discussed above) weighs in favor of denying Shoals' Motion.

    **i.**    **A *Bench Trial is Appropriate for this Highly Technical Action* (*Parrott Factor One*)**.

    a.  <u>Another Court in this District has found that less complex cases than this one were best suited for a bench trial</u>.

This is an indisputably complex matter that will turn largely on expert analysis and testimony. Indeed, Shoals has consistently and accurately described this case as "complex" and "highly technical." (*See*, *e.g.*, Dkt. No. 50, Motion to Modify Initial CMO; Dkt. No. 65, Motion to Modify CMO.) But Shoals' Motion disregards the complicated scientific and damages analyses required of the parties, their experts, and fact witnesses.

---

[6] 915 F.2d 201 (6th Cir. 1990).

[7] 707 F.2d 1262 (11th Cir. 1983).

The legal and factual issues here are not well suited for a jury. In *Devs. Diversified*, for example, another court in this District found that "interpretation of a complex 32-page commercial lease" and expert testimony "concerning how and why [a] roof collapsed" was not "best tried to a jury." 2015 WL 13528477 at *6. This follows longstanding Sixth Circuit and other precedent that highly complex cases are best suited for a bench trial. *See, e.g.*, *Nationwide*, 2006 WL 8424005 at *2 (Rule 39(b) motion denied where the case involved "reasonably complex patent infringement, trade secrets, and breach of contract issues," and "[a] fair amount of trial time will likely involve testimony involving subjects such as technical analysis of patent claims in relation to products accused of infringement and prior art."); *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198 (6th Cir. 1986) (affirming denial of Rule 39(b) motion where "the district court, in denying the motion, reasoned that, due to the complexity of the case, a jury trial would be less efficacious than a bench trial"); *Crawford v. Wilson*, 693 F.2d 606 (6th Cir. 1982) ("These consolidated cases involved a great deal of testimony concerning property values, accounting procedures and other complicated evidence. We find no abuse of discretion in the denial of the [Rule 39(b)] motion in this case.").

The facts here are significantly more complex than those in *Devs Diversified*. Here, the parties are presenting their theories as to why exposed conductor is sporadically seen in photovoltaic wire when it is acting as a "specialized component part" in Shoals' patented "custom wire harness" system, which is "used to aggregate electricity from multiple solar panels and deliver that electricity to inverters where it is then delivered to the power grid or a battery storage solution." (Dkt. No. 57, First Amended Complaint, ¶¶ 12, 15.) This case concerns wire "used at approximately 300 solar field sites nationwide," Shoals' various "remediation" efforts relating to the wire, and related complex damages theories. Resolving these questions requires highly

technical and complicated expert testimony on, among other things: the manufacture and design of photovoltaic wires, harnesses, and connectors; the specifications and terms and conditions of sales relating to those products; the methods and instructions for use and installation of those products; the potential hazards of those products; the design and manufacture of similar products by other companies; the extent to which Shoals was damaged by any breach of duty by Prysmian; and the extent to which Prysmian was damaged by any breach of duty by Shoals. Both parties have retained numerous experts, including electrical, mechanical, chemical, process, and polymers engineers, as well as experts in industry and technical standards, underscoring the technical complexity of this case. In other words, this is not an ordinary case. It is a deeply technical products liability and contractual dispute that will require substantially more analysis than that required to interpret a lease in the context of a collapsed roof.

> b. <u>Shoals does not explain why its tort and contract claims, which have existed since Shoals filed its Original Complaint, are more appropriate for a jury.</u>[8]

Shoals' conclusory statement that "contractual and tort claims are best decided by a jury," which Shoals purports to substantiate with three cases outside the Sixth Circuit, ignores the fact that Shoals asserted its contractual and tort claims in its Original Complaint but affirmatively chose not to demand a jury at that time—or when it filed its First Amended Complaint. (Dkt. No. 1, Original Complaint; Dkt. No. 57, First Amended Complaint.) Pursuant to Rule 38(b)(1), Shoals should have made its jury demand within 14 days of serving either of these complaints, or after answers were filed—the latest of which was filed on January 2, 2025. (Dkt. No. 60, Answer to

---

[8] Three of Shoals' causes of action—Unjust Enrichment, Breach of the Implied Covenant of Good Faith and Fair Dealing, and "Equitable Indemnity," are equitable claims that are not appropriate tried to a jury. *Kramer v. Am. Elec. Power Executive Severance Plan*, 128 F.4th 739, 749 (6th Cir. 2025) (citation omitted); *see also Perttu v. Richards*, 605 U.S. 460, 471, 145 S. Ct. 1793, 1802, 222 L. Ed. 2d 108 (2025) ("Ordinarily, judges resolve equitable claims . . . .").

First Amended Complaint.) Shoals did not do so then, a decision that, as detailed above, Shoals reaffirmed multiple times throughout this lawsuit.

Shoals' misrepresentation allegations based on Prysmian "knowing" its wires exhibited "unacceptable shrinkback" ***are not new*** and do not justify a jury trial. Shoals might have found what it considers evidence supporting its allegations over the course of discovery, but that evidence does not justify Shoals' late request for a jury, and Shoals had that evidence long enough to include reference to it in its December 4, 2024, First Amended Complaint.[9] (*See, e.g.,* Dkt. No. 57, First Amended Complaint, ¶¶ 44, 51, 53, 157–167; 177–186.)

Shoals' reliance on "newly discovered evidence [allegedly] demonstrating the pervasiveness of Prysmian's gross negligence, misrepresentations, and efforts to conceal the true facts from Shoals" is futile. The "evidence," and more importantly, Shoals' claims, are not "new" and do not justify Shoals waiting until the close of fact discovery to request a jury trial. Indeed, by arguing it only found supposed support for its claims through discovery, Shoals is suggesting it did not have a good faith basis under Rule 11 to include those claims in its Original or First Amended Complaint.

### ii. *A Jury Trial will Disrupt this Court's Schedule and Prysmian's Schedule (Parrott Factor Two)*.

While Prysmian is not privy to this Court's trial schedule, it is very likely that a jury trial setting will require this Court to reset the trial of this case (again). This is especially true because Prysmian believes that both sides will request more than ten trial days if this case is to be tried to a jury. Accordingly, this will also disrupt the timing of the trial for Prysmian and its fact and

---

[9] Shoals' comment that "Prysmian had only made nine of its thirty-four document productions" by the time Shoals filed its First Amended Complaint is misleading, as those nine document productions contain approximately 78% of the entire volume of documents Prysmian produced. (Dkt. No. 86, Memorandum, p. 9.)

expert witnesses, as well as executives and attorneys, who have been planning for a two-week trial in August 2026.

### iii. *Prysmian will be Prejudiced by a Late Switch to a Jury Trial (Parrott Factor Three)*.

As discussed above, granting Shoals' request for a jury trial, made literally minutes after Shoals concluded its twentieth and final deposition of a Prysmian witness, would unfairly prejudice Prysmian, which on its own, is grounds for denying Shoals' Motion. *Devs. Diversified*, 2015 WL 13528477 at *6.

### iv. *Shoals' Unreasonable Delay in Requesting a Jury Trial is Inexcusable (Parrott Factors Four and Five)*.

Shoals' purported justification for its delay in requesting a jury trial—i.e., discovery of two test reports (Exhibits C and D to Shoals' Memorandum) produced long ago and duplicative or cumulative of similar evidence—is not legitimate. Prysmian produced the test report contained in Exhibit D (and largely reiterated in Exhibit C) on February 21, 2025, and Shoals' counsel introduced it as an exhibit in the first deposition of a Prysmian witness on May 28, 2025. Moreover, these two documents, which several Prysmian witnesses testified about extensively in depositions, reflect Prysmian's longstanding opinion that Shoals did not ensure its molded connectors properly bond to Prysmian's wire insulation. The test reports do not contain ***any*** shrinkback testing data. There are only two possible explanations for Shoals' failure to request a jury until two years after bringing this lawsuit and almost a year after its deadline under Rule 38 expired: (1) mere inadvertence; or (2) Shoals deliberately mislead Prysmian into operating under the belief this would be a bench trial through all of fact discovery. Shoals has never claimed mere inadvertence, so only the second explanation remains. Waiting for an opponent to base its

litigation strategy on a non-jury trial and then only requesting a jury after extensive (and all) fact discovery has been conducted is gamesmanship that this Court should not condone.

Regardless, the Sixth Circuit has explained that even waiting two months too long to make a jury demand can be grounds to deny a Rule 39(b) motion. For example, in *Misco*, the Sixth Circuit explained that "[a]s a general rule, a district court will not abuse its discretion in denying a Rule 39(b) motion if the only justification is mere inadvertence." *Misco*, 784 F.2d at 205. The *Misco* plaintiff "did not file its demand for a jury trial ***until almost three months***" after it filed the lawsuit and the plaintiff gave "no reason why it was ***well over two months late*** in requesting a jury trial." *Id*. (emphases added). Here, Shoals waited exactly 24 months after filing this lawsuit—and nearly 12 months after amending its complaint—to request a jury trial, far exceeding the two-months that warranted denial of the *Misco* plaintiff's Rule 39(b) motion.

Similarly, in *Andrews v. Columbia Gas Transmission Corp.*, the "plaintiffs requested a jury trial over five months after the date to amend the pleadings, and over six months after [the defendant] filed it amended answer." 544 F.3d 618 (6th Cir. 2008). Despite the *Andrews* plaintiffs providing a more legitimate excuse for their delay than Shoals—that they relied on the Magistrate Judge's preliminary (but incorrect) trial order, which stated that "the case will be individually calendared for jury trial"—the court rejected the argument, stating that "ultimately, plaintiffs' failure to demand a jury trial smacks of mere inadvertence." *Id*. at 633.

Again, Shoals ***deliberately*** waited much longer than the plaintiffs in *Misco* and *Andrews* to request a jury trial. Moreover, unlike Andrews, this case was never scheduled for a jury trial; rather, this Court expressly ordered on multiple occasions that this would be a ***bench*** trial consistent with Shoals' initial and repeated representation. Shoals' delay should not be excused.

16

## IV. CONCLUSION

Shoals should not be permitted to try this case to a jury after choosing to have a bench trial, reiterating that choice in multiple court filings, waiving its right to a jury trial, and then changing its mind after the completion of fact discovery. Shoals must live with its choice and try this highly technical case to this Court. For these reasons, Prysmian requests that this Court deny Shoals' Motion in its entirety and grant Prysmian all other legal and equitable relief to which it is justly entitled.

Dated: November 14, 2025.

Respectfully submitted,

*/s/ Lucas T. Elliot*
Lucas T. Elliot (BPR 037084)
Elle G. Kern (BPR 0343301)
**FROST BROWN TODD LLP**
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
Telephone: (615) 251-5550
lelliot@fbtlaw.com
ekern@fbtlaw.com

**MORGAN, LEWIS & BOCKIUS LLP**
David J. Levy (admitted *pro hac vice*)
Cullen G. Pick (admitted *pro hac vice*)
Susan Stradley (admitted *pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
713.890.5000 (telephone)
david.levy@morganlewis.com
cullen.pick@morganlewis.com
susan.stradley@morganlewis.com

Deanne L. Miller (admitted *pro hac vice*)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
213.612.2500 (telephone)
deanne.miller@morganlewis.com

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing upon the following:

    Jessalyn H. Zeigler (TN Bar No. 016139)
    Courtney A. Hunter (TN Bar No. 038014)
    Briana T. Sprick Schuster (TN Bar No. 038305)
    Kathryn Hannen Walker (TN Bar No. 020794)
    **BASS, BERRY, & SIMS PLC**
    21 Platform Way South, Suite 3500
    Nashville, TN 37203
    jzeigler@bassberry.com
    courtney.hunter@bassberry.com
    briana.sprick.schuster@bassberry.com
    kwalker@bassberry.com

    Jim Manley (admitted *pro hac vice*)
    Jill Kuhn (admitted *pro hac vice*)
    **Troutman Pepper Locke LLP**
    600 Peachtree Street, N.E., Suite 3000
    Atlanta, GA 30308
    Jim.Manley@Troutman.com
    Jill.Kuhn@Troutman.com

                                        */s/ Lucas T. Eliot*

2799560.0779049  4925-7187-6474