# EXHIBIT 4

**REDACTED**

## *Shoals Technologies Group*

vs

## *Prysmian Cables and Systems USA*

Deposition of

## *JEREMY GUSTITUS  30(B)(6)*

*October 30, 2025*



HARPETH
COURT REPORTERS

(615) 933-6786
www.harpethcourtreporters.com

stranded conductor?

A.      Yes.

MR. LEVY:  Objection.  Form.

BY MR. MANLEY:

Q.      **The relevant product.**

A.      I assume so, yes.

Q.      **Was it ever contemplated, when the aluminum product in Sedalia changed over to skim coat, that Willimantic and its PV products would simultaneously change over to skim coat?**

███████████████████████████████████████

███████████████████████████████████████

████████████████

Q.      **What is Prysmian's official position today for why it redesigned the legacy product and moved to skim coat?**

A.      █████████████████████████████████

███████████████████████████████████████

███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

███████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

(615) 933-6786
www.harpethcourtreporters.com
143
Case 3:23-cv-01153    Document 177-2    Filed 05/06/26    Page 3 of 8 PageID #: 7704

Q.    Was the redesign precipitated by Shoals' complaints?

A.    ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████

Q.    The effort around -- and it's significant effort, right?

A.    Yes.

Q.    The significant effort around redesigning the legacy product, did the complaints of customers other than Shoals precipitate, in part, that conversation and that effort?

A.    ██████████████████████████████

██████████████████

Q.    Did the ████████████████████████████████

████████████████████████████████

██████████████████████████████

Q.    When did the company make the decision that it intended to redesign the legacy product?

(615) 933-6786
www.harpethcourtreporters.com
144
Case 3:23-cv-01153    Document 177-2    Filed 05/06/26    Page 4 of 8 PageID #: 7705

documents.

A.      Okay.

Q.      And I'm going to be up front with you before we start.

A.      Okay.

Q.      We have, like, little pieces of a mosaic.

A.      Okay.

Q.      And I would like your help understanding what documents exist so that we can get those documents so that tomorrow I don't have to have a meet-and-confer with Mr. Levy and then go to the Court and ask for help because we -- we -- I think we don't have everything maybe that you think we have, particularly test reports.

A.      Okay.

Q.      So we're going to take our mosaic, and we're going to go through it, and it's going to be a little choppy.  And if I understood better, believe me, I wouldn't be bringing it up now, but this is kind of my last chance.

        Was there any shrinkback testing for or by UL certification done on the legacy insulation compound PRM-2315?

A.      Not that I'm aware of.

Q.      Is Prysmian able to prove that the legacy

(615) 933-6786
www.harpethcourtreporters.com
183
Case 3:23-cv-01153    Document 177-2    Filed 05/06/26    Page 5 of 8 PageID #: 7706

Schneider, and he handed it to me yesterday saying that this was something that we would discuss today. I don't know if I have it with me.

But essentially it's a UL procedure --

Q. Is it right there? I think you were almost to it. It's the second to the bottom.

A. No, that's a -- that was the -- the --

Q. Master services agreement?

A. No, that was the standard itself.

Q. Okay.

A. UL 44 and --

Q. To cut to the chase, will Prysmian assist in and provide all documentation clearing up, once and forever, that the legacy wire was permissibly listed by UL as an RHW-2 not only in black but in red?

MR. LEVY: I'm -- if there are any -- if this has to do with any discovery issue, then that's probably addressed through counsel. So I'm not sure -- if you have questions for him as a corporate rep on certain documentation issues, then you can ask him that. But in terms of like assisting through production, that's not appropriate for the witness.

MR. MANLEY: Okay. I'll ask you. I mean, we've been asking for this for nine months.

MR. LEVY: We've given you and we've responded and we've fought about it and we've had letters to the Court about a bunch of issues. Our position is that, you know, all those discovery issues are closed.

MR. MANLEY: Okay. That puts us where we need to be.

BY MR. MANLEY:

Q. If Prysmian, through documents that's already produced, can show the paper trail that the legacy product properly bears the RHW-2 mark, we need to look at the document you just told us about, which is the -- what did you call it?

A. Procedure, the UL procedure page.

Q. Yeah. Do we need test reports?

A. I believe UL refers to it as a description page.

Q. Okay.

A. Yeah. Maybe that's a Prysmian term, "procedure," but UL refers to it as a description page.

Q. Okay. Do we also need access to any test reports?

A. Not to know that we're certified to produce it. No, you don't.

(615) 933-6786
www.harpethcourtreporters.com
186
Case 3:23-cv-01153    Document 177-2    Filed 05/06/26    Page 7 of 8 PageID #: 7708

Q.      Well, to see the trail that you were permissibly certified that there was no confusion on UL's part with the information that you gave UL, what would we need just to make it 100 percent rock solid?

MR. LEVY:  Objection.  Form.

THE WITNESS:  You would likely need the test report.  There's -- so there's a test report that is accompanying that file, and it's all-inclusive.  So I was asked to provide two -- two files and their test reports, which I did.

BY MR. MANLEY:

Q.      Okay.  Would the test reports include DSC scans or TGA scans?

A.      Not necessarily, no.

Q.      Okay.  Under what circumstances might they include those scans?

A.      So those are kept in a separate database that Prysmian wouldn't have access to.

Q.      Who would have access?

A.      UL.

(Off-the-record discussion.)

BY MR. MANLEY:

Q.      Okay.  Okay.  We would need test reports for -- for which compounds and which variations of