# EXHIBIT 5
**REDACTED**

# SHOALS TECHNOLOGIES GROUP

vs

# PRYSMIAN CABLES AND SYSTEMS USA

Deposition of

# JEREMY GUSTITUS

*February 17, 2026*



**HARPETH COURT REPORTERS**

(615) 933-6786

www.harpethcourtreporters.com

Q.     -- the questions on the table are the wire that Prysmian sold to Shoals, was it properly RHW-2 rated, should the UL44 shrinkback test have been run in order to list the project with UL.

A.     Yes.

Q.     Those are kind of the -- the two big things, right?

A.     Yeah.  Right.  Yep.

Q.     And without getting into privileged information, other than what you quoted in your report, there were no other documents that you located that spoke to those issues?

ATTORNEY PICK:  You can answer.

THE WITNESS:  Oh, I can answer?

ATTORNEY PICK:  You can answer the question.

THE WITNESS:  Okay.  So I did -- so the -- there's the initial documents that are -- that we -- so there's been several documents produced.

So I reviewed those documents and made sure that they aligned, basically saying that Test Record Number 7 referred to Test Record Number 1 and that those

(615) 933-6786
www.harpethcourtreporters.com
23
Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 3 of 20 PageID #: 7712

were correct and in the correct files, making sure that there wasn't any discrepancies, meaning that there was something in the description page which we produced that contradicted what was in the test records and -- and that nature.

BY ATTORNEY MANLEY:

Q.   **So did you find the description page?**

A.   Yes.

Q.   **Okay.  But you don't quote that in your report?**

A.   No.

Q.   **Okay.  Do you know the Bates number of the description page?**

ATTORNEY PICK:  You don't.  I can get it to you.

ATTORNEY MANLEY:  Okay.  Let me --

ATTORNEY PICK:  There's no question.  He doesn't know it.

So you can answer his question for purposes of the record.

THE WITNESS:  I don't know -- I don't know what the Bates number is, no.

ATTORNEY PICK:  Okay.  I'm

Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 4 of 20 PageID #: 7713

Attorney Pick by the way, not Attorney Elliot.

THE WITNESS: And to clarify, I don't necessarily have all the information that's been disclosed or access to the Bates numbers.

I did rely on counsel to make sure that what I had was correctly offered.

BY ATTORNEY MANLEY:

Q. In the description page, it didn't provide any helpful information in terms of what you set forth in your report, I'm assuming, or you would have cited that?

A. Right. Not really, no.

Q. Okay. And then I think you told me also that you -- you made sure that, say, Test Record Number 7 matched up with Test Record Number 1?

A. Yes.

Q. What does that mean?

A. Because I believe that in the -- if you would look at Test Record Number 7, there's a reference that says that this -- no further testing was deemed necessary because of the

(615) 933-6786
www.harpethcourtreporters.com
25
Case 3:23-cv-01153    Document 177-3    Filed 05/06/26    Page 5 of 20 PageID #: 7714

previous activities in Test Record Number 1 --

Q. Okay.

A. -- which was in that same document.

Q. Okay. And Test Record Number 1, do you remember generally it just predated Test Record Number 7?

A. Predated, yeah.

Q. Okay.

A. So the -- yeah.

Q. Okay. We'll dig into all that stuff.

A. Okay.

Q. But you didn't see a need to cite to the description page to make your point?

A. Right.

Q. You didn't see a need to cite to any test record other than Test Record Number 7 to make your point?

A. That's correct.

Q. Okay. Our detour spot was you were telling us about what you did to get ready, how you spent your 20 hours.

Anything else that you did that you've not mentioned?

A. Not that I can recall, outside of, you know, what I discussed and worked on

and ask for documents, but I didn't in this case. I searched myself.

I have access to a portal. And in that portal, I can pull up -- it's very cumbersome because there's lots and lots of files.

But I pulled up the ones that were key to my report, so the test record, description page, which is not mentioned in my report but related to it, for both the 4703 listing and the 44 listing.

BY ATTORNEY MANLEY:

Q.   Is there a reason why you didn't go to UL and get their help directly?

A.   Quite honestly, in the past, I have -- I haven't had real good luck with getting that. It's been better if I search and find.

Q.   I feel you.

A.   Yeah.

Q.   Okay. Are there any tasks that relate to your assignment as an expert that you've not yet completed?

A.   No. I hope not.

Q.   You don't plan to supplement -- you

don't plan to supplement your report, right?

A.   No, I don't plan to supplement my report.

Q.   And you don't plan to do any other work relative to your report or your designation as an expert?

A.   No, sir.

Q.   Do you view your report as solely a rebuttal to Mr. Cybula's report?

A.   Yes, sir.

Q.   Absent Mr. Cybula's report, you wouldn't have created an expert report?

A.   That's right.

Q.   And you sought only to address his opinions?

A.   Yes.

ATTORNEY MANLEY:  I know this is early, but let's take a break.

ATTORNEY PICK:  Okay.

THE VIDEOGRAPHER:  Going off the record.  The time on the monitor is 9:12.

-   -   -

(Whereupon, a short recess was taken.)

-   -   -

(615) 933-6786
www.harpethcourtreporters.com
39
Case 3:23-cv-01153    Document 177-3    Filed 05/06/26    Page 8 of 20 PageID #: 7717

information.

So it could have been from a previous RHW-2 file, or it could have been from another file that was -- just happened to be within the wall thickness requirements.  And the test was performed, and they pointed to that one and said, "Yeah, this is the" -- "this is an as-good or worst-case scenario.  And General Cable already demonstrated that they met that requirement, so I'm checking off that box."

And they would have did that for each of the tests that they felt were required for the certification.

BY ATTORNEY MANLEY:

Q.   Okay.  Let's go to page 2 of your report for a minute.

A.   Yes, sir.

Q.   You got Footnote Number 2 and Footnote Number 3.

A.   Okay.

Q.   And you cite to UL000162.  That's Footnote Number 2.

A.   Uh-hum.

(615) 933-6786
www.harpethcourtreporters.com
68
Case 3:23-cv-01153    Document 177-3    Filed 05/06/26    Page 9 of 20 PageID #: 7718

Q.   In Footnote Number 3, you cite to UL002624, correct?

A.   Correct.

Q.   Are those documents identical in substance?

A.   I would have to look at them again side by side.

Q.   Okay.  So because Ms. Kuhn is on the job, your tabs match your footnotes.

A.   Ah, okay.  Good.

Q.   So you can go to Tab Number 2.

A.   This is Test Record Number 1?

Q.   That's your Footnote Number 2.  And then you go to Tab Number 3, and that's your Footnote Number 3.

And I can't find -- there's a little bit of a formatting difference.  One of them, I think, was produced by Shoals.  I can't -- my Bates number is cut off.

-   -   -

(Whereupon, there was an off-the-record discussion.)

-   -   -

THE WITNESS:  They're both on the same date.

Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 10 of 20 PageID #: 7719

BY ATTORNEY MANLEY:

Q. But I can't -- so that we don't get caught up in going back and forth --

A. Okay.

Q. -- I've looked. Others have looked. I can't see any difference between the two.

A. They do appear to be the same.

Q. Okay.

ATTORNEY MANLEY: Okay. Let's mark this document as Exhibit 1068 under Tab Number 2.

-    -    -

(Whereupon, Exhibit 1068 was marked for identification.)

-    -    -

BY ATTORNEY MANLEY:

Q. And then if, at a break or something, you go and you look and you see Tabs 2 and 3 are somehow different --

A. Okay.

Q. -- you can point out the difference, but I can't find the difference.

A. Okay.

Q. And I'd rather just refer to one document.



A.   That's correct.

Q.   **And if we go to** ███████████████

███████████████ **, right?**

A.   Right.

Q.   **All right.  So let's focus on that middle table.**

A.   Yes.

Q.   **So it's** ████████████████

It's got that same

██████████████████████████████

██████████████████████████

███████████████████████████ **, right?**

A.   ██████

Q.   **And then that** ██████████████ **, what is that?**

A.   ██████████████████████

████████████████

Q.   **Okay.  And** █████████████████

████████████████████████████████████

███████████████████████████████████

█████████ **, correct?**

A.   ███████████████████

I'm not an expert, again, on the chemistry.

Q.   **Yeah.**

(615) 933-6786
www.harpethcourtreporters.com
102
Case 3:23-cv-01153    Document 177-3    Filed 05/06/26    Page 12 of 20 PageID #: 7721

A.   But I see -- I believe that that is -- ███████████████████████

Q.   Yes.

And that's ██████ in this product, right?

A.   ██████████████████████

Q.   Oh, what would it be?

A.   That would be something else.  I don't know.  I don't know what that is.

Q.   Is that the ████████████████?

A.   No, I don't think it would be ████████

Q.   All right.

A.   ██████████ down there --

Q.   Yes.

A.   -- █████████, that's the -- that's the ██████.  That's what ██████████ ██████████

Q.   Sorry.  Thank you.

A.   Yes, sir.

Q.   And there's ████████████████████ ██████████████████████████████?

A.   █████████████

Q.   These are different products, different material, different means of

Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 13 of 20 PageID #: 7722

construction?

A. Yeah, I agree.

[REDACTED]

Q. But a different process?

A. [REDACTED]

Q. [REDACTED]

A. [REDACTED]

Q. Okay. All right. Let's go -- let's go back to your report, page 2, Exhibit 1067.

And I want to focus on that middle part of the page where you're quoting Prysmian 44 file E523838.

A. Sorry. Right here. Page 2. Okay.

Q. Okay.

A. Yes.

Q. All right. I don't want to read this all again.

A. Yeah.

Q. But, basically, there's no testing needed and -- no samples or no testing was considered necessary to create this new section

for thermoset insulated wire 2,000-volt construction RHW-2 employing General Cable 2315, the product that Prysmian or General Cable sold to Shoals, correct?

A.   Correct.

Q.   And then the justification for that is based on the testing completed under -- not the RHW-2 file for the manufacturer but the photovoltaic wire file called out there.

And that was in the test report that's dated January 10th of 2011 and Test Record Number 7, correct?

A.   Correct.

Q.   Okay.  All right.  Let's go to Tab 21 in the back.

Okay.  So this is the underlying testing that UL utilized to bestow the RHW-2 rating on PRM2315, correct?

A.   Let's see.

ATTORNEY PICK:  Take a minute to --

THE WITNESS:  Yeah.

ATTORNEY PICK:  -- review it so you know the answer to his question.

ATTORNEY MANLEY:  While you're

(615) 933-6786
www.harpethcourtreporters.com
105
Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 15 of 20 PageID #: 7724

taking a minute to look at it, let's mark that document Exhibit 1071.

THE WITNESS: Okay.

- - -

(Whereupon, Exhibit 1071 was marked for identification.)

- - -

BY ATTORNEY MANLEY:

Q. **And it begins -- you and I both need another hand -- with Prysmian Bates 00029998.**

A. Okay. So that would -- it begins with that one, and then we would have to look at Test Record 7, correct?

Q. **Right.**

A. Okay.

Q. **I'm just following your report --**

A. Okay.

Q. **-- and what it quotes and what's referenced in the quote.**

A. Okay. Test Record Number 8.

Okay. Test Record Number 7.

Q. **Okay. So this is File Number E343277. It's referenced in your report.**

**And this is the issue date of**

1/10/2011 that's referenced in your report, and this is the same Test Record Number 7, correct?

A.   Correct.

Q.   Okay.  What's the wire that was tested here?

A.   There was tested aluminum -- stranded aluminum conductor, 10-gauge PV, 600 volts; stranded aluminum conductor, 10-gauge PV, 2,000 volts; stranded aluminum conductor, 10-gauge, RHW-2, 600 volts; and stranded aluminum conductor, 10-gauge, RHW-2.

And this was in a red color, so there are -- sorry.  There was a red and a white for each of them.

Q.   And the ███████████████████████████████████████████████████, correct, in each of the cases you just read out?

A.   F████████████████████████████████████████████████████

Yes, it does state that.

Q.   Okay.  And that's the ████████████████████████, correct?

A.   ████████████████

Q.   That's ████████████████████.

We've established that, right?

(615) 933-6786
www.harpethcourtreporters.com
107
Case 3:23-cv-01153   Document 177-3   Filed 05/06/26   Page 17 of 20 PageID #: 7726

A.    That's correct.

Q.    But at the end of the day, the RHW-2 status for ████████████████████████, was granted by UL based on testing that was done on a p█████████████████████████████████████, right?

ATTORNEY PICK:  Objection. Form.

THE WITNESS:  It would appear that way, yes.

BY ATTORNEY MANLEY:

Q.    Okay.  Do you remember seeing this document before today?

A.    Yes.

Q.    Did you notice the fact that the tests were run on the ████████████████████?

A.    I did not.

Q.    Today is the first day you ever noticed that?

A.    Yes.

Q.    How does that impact your report and your opinions in your report?

A.    It's still -- my opinion is that UL granted it based upon this.  I don't know what they -- what decisions they made based upon

A.   Yes.

Q.   Okay.  How many products would you say?

A.   Probably, me personally, more than 50 but far more including my team.

Q.   Okay.  But -- and I think you pointed it out earlier -- you weren't at General Cable or its legacy companies at the relevant time period in terms of bestowing of RHW-2 status on ███████, correct?

A.   That's correct.

Q.   And I know you worked hard on this, and I want to be fair to you.  We talked about this at your last deposition.

Prysmian's got every incentive to produce the documents that show the record of how ████████ obtained the RHW-2 status, right?

A.   Right.

Q.   And you've undertaken your best efforts to research that and understand it as best you could?

A.   I did.

ATTORNEY PICK:  Objection.  Form.  Scope, Jim.

ATTORNEY MANLEY: This is 100 percent in his report.

BY ATTORNEY MANLEY:

Q. And that led you to --

ATTORNEY PICK: Document collection and production is in his report?

BY ATTORNEY MANLEY:

Q. And that led you to Test Report Number 7, correct?

A. Based upon what we had provided during this trial, yes.

Q. As part of your bona fides for being an expert in this area, you reference your role on the UL44 technical committee.

Is that the right --

A. Yeah. I believe that the -- it's referred to as the technical committee, but it's -- the correct terminology is standards development committee, and that's STP83.

Q. That's what I was going to ask you about.

What does that stand for?

A. I don't know exactly what the "STP" stands for, but 83 is the power cables.

Case 3:23-cv-01153    Document 177-3    Filed 05/06/26    Page 20 of 20 PageID #: 7729